IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| WENDY WHITAKER, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | No. 4:06-140-CC |
| SONNY PERDUE, et al. ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY
INJUNCTION TO STOP THE STATE OF GEORIGA FROM
CRIMINALIZING PROTECTED RELIGIOUS ACTIVITY**

Defendants urge this Court to find that the ban on "volunteering" at church applies only to persons who work in "an employment situation, with or without pay."[1] This creative interpretation of Ga. Code Ann. § 42-1-15(c)(1) ("the Statute") – one that contrasts markedly with how the Statute is being interpreted by law enforcement officers – merely reinforces Plaintiffs' contention that the Statute is capable of being construed in multiple, conflicting ways. This is the very essence of vagueness, a quality not acceptable in criminal laws. The Statute is also overbroad and runs afoul of the First Amendment. For the foregoing and

---

[1] See Defendants' Brief at 14.

following reasons, Plaintiffs are likely to succeed on the merits and have satisfied all of the other preliminary injunction requirements:

A. <u>The Statute's Severe Penalties Deter Plaintiffs From Participating in Protected Religious Activity, Causing Them Irreparable Harm.</u>

Defendants claim there is no threat of immediate harm and accuse Plaintiffs of exaggerating the impact of the Statute. In fact, many class members were specifically ordered to stop participating in religious activities, while others are deterred from participating in such activities by the Statute's severe penalties.

A Cobb County probation officer, for example, told Plaintiff Andrew Norton that he cannot work the soundboard during services, sing in the adult choir, or set up for church events.[2] According to Plaintiff Matthew Cornell, a Gwinnett County sheriff's deputy told him he was not sure what the term "volunteer" meant, while an assistant district attorney instructed Mr. Cornell not to participate in <u>any</u> church activity aside from attendance at services.[3] Omar Howard's parole officer told him not to sing in the choir or speak at church.[4] If

---

[2] See Declaration of Andrew Norton (Exhibit 1).

[3] See Declaration of Matthew Cornell (Exhibit 2).

[4] See Declaration of Omar Howard (Exhibit 3).

these men defy these officers, they face 10-30 years in prison. The threat of prosecution under the Statute is not speculative, but real and imminent.

Mr. Norton, Mr. Cornell, and Mr. Howard are not alone. Many other class members are discouraged from practicing their religion by a statue that promises to imprison them for at least a decade if they engage in activity that could be considered "volunteering" at church. See United States v. Williams, 128 S. Ct. 1830, 1838 (2008) ("[T]he threat of enforcement of an overbroad law deters people from engaging in constitutionally protected speech").

Defendants contend that Plaintiffs have not shown harm because they have not been threatened with arrest.[5] Case law is clear, however, that a plaintiff need not be threatened with arrest or prosecuted before challenging an ambiguous criminal statute. See Steffel v. Thompson, 415 U.S. 452, 459 (1974) ("[I]t is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights").[6] The "irreparable harm" requirement, moreover, is

---

[5] See Defendants' Brief at 6.

[6] See also Babbitt v. Farm Workers Nat'l Union, 442 U.S. 289, 302 (1979); Jacobs v. The Florida Bar, 50 F.3d 901, 904-905 (11th Cir. 1995) (standing proper where plaintiff intended "to engage in a specific course of conduct 'arguably affected with a constitutional interest'").

these men defy these officers, they face 10-30 years in prison. The threat of prosecution under the Statute is not speculative, but real and imminent.

Mr. Norton, Mr. Cornell, and Mr. Howard are not alone. Many other class members are discouraged from practicing their religion by a statue that promises to imprison them for at least a decade if they engage in activity that could be considered "volunteering" at church. See United States v. Williams, 128 S. Ct. 1830, 1838 (2008) ("[T]he threat of enforcement of an overbroad law deters people from engaging in constitutionally protected speech").

Defendants contend that Plaintiffs have not shown harm because they have not been threatened with arrest.[5] Case law is clear, however, that a plaintiff need not be threatened with arrest or prosecuted before challenging an ambiguous criminal statute. See Steffel v. Thompson, 415 U.S. 452, 459 (1974) ("[I]t is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights").[6] The "irreparable harm" requirement, moreover, is

---

[5] See Defendants' Brief at 6.

[6] See also Babbitt v. Farm Workers Nat'l Union, 442 U.S. 289, 302 (1979); Jacobs v. The Florida Bar, 50 F.3d 901, 904-905 (11th Cir. 1995) (standing proper where plaintiff intended "to engage in a specific course of conduct 'arguably affected with a constitutional interest'").

traditionally relaxed in the First Amendment context.[7] Plaintiffs have shown irreparable harm.

B.  <u>Plaintiffs Are Likely to Succeed on the Merits of their Vagueness, Overbreadth, and First Amendment Claims.</u>

Plaintiffs will succeed on the merits for three reasons. First, the term "volunteer" is vague and susceptible to multiple, conflicting interpretations.[8] Webster's Dictionary, for example, defines a "volunteer" as one who "offers himself for a service of his own free will."[9] Defendants, by contrast, claim (in the face of actual practice to the contrary) that the volunteer provision only prohibits "employment-type" activity.[10]

---

[7]  See Digital Properties, Inc. v. City of Plantation, 121 F.3d 586, 589 (11th Cir. 1997) ("the injury requirement is most loosely applied when a plaintiff asserts a violation of First Amendment rights based on the enforcement of a law, regulation or policy"); Cheffer v. Reno, 55 F.3d 1517, 1523 n. 12 (11th Cir. 1995) ("Appellants' First Amendment claims allege that the Act currently 'chills' specific protected expressive activities and, thus, present sufficiently concrete and immediate questions for review").

[8]  See Williams, 128 S. Ct. at 1846 (a statute is vague where there is "indeterminacy" in what conduct it prohibits); Nat'l Endowment for the Arts v. Finley, 524 U.S. 569, 588 (1998) (where the terms of a criminal statute are "opaque," they "raise substantial vagueness concerns.")

[9]  WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 1322 (9th ed. 1983).

[10]  See Defendants' Brief at 14.

The Statute does not define the term "volunteer," leaving Plaintiffs, Defendants, and law enforcement officers to guess at its meaning. See Grayned v. City of Rockford, 408 U.S. 104, 108-109 (1972) ("A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution of an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application"). It is a basic principle of due process that a criminal statute is void for vagueness if its prohibitions are not clearly defined. Id. at 108.

Second, in addition to being vague, the term "volunteer" is overbroad.[11] On its face, the Statute reaches all volunteering at a church. The Statute does not merely regulate religious activity that might create problems, such as having a sex offender serve as a Sunday school teacher for children. Even solitary volunteer activities are prohibited. The Statute expansively prohibits over 15,000 people from volunteering at a church. There is no definition of the term "volunteer." In addition, there is no scienter requirement to mitigate the effect of

---

[11]   See Bd. Of Airport Comm'rs of City of Los Angeles v. Jews for Jesus, Inc., 482 U.S. 569, 574 (1987) (under the overbreadth doctrine, "an individual whose own speech or conduct may be prohibited is permitted to challenge a statute on its face because it also threatens others not before the court – those who desire to engage in legally protected expression but who may refrain from doing so rather than risk prosecution . . . .") (emphasis added).

the Statute's overbreadth.[12] Under such a sweeping ban, every person who volunteers at a church in any capacity is breaking the law.

Defendants cite the Statute's "legislative history" urging this Court to find that the ban on volunteering at church means something other than what it says.[13] But review of so-called "legislative history" is impermissible unless a statute is "inescapably ambiguous." United States v. Veal, 153 F.3d 1233, 1245 (11th Cir. 1998). Here, Defendants' "definition" of "volunteer" contradicts common meaning and dictionary definitions. Defendants cannot urge the Court to look behind the Statute without conceding that the Statute is vague.[14]

---

[12]   Cf. United States v. Williams, 128 S. Ct. 1830, 1839 (2008) (a scienter requirement may save the constitutionality of an allegedly overbroad statute).

[13]   See Defendants' Brief at 7.

[14]   The State's "attempt to look past the plain language of the statute in reliance on legislative history violates a basic principle of statutory interpretation." U.S. v. Mt. Sinai Med. Ctr. of Fla., Inc., 486 F.3d 1248, 1252 (11th Cir. 2007). "[W]hen the statute's language is plain, the sole function of the courts . . . is to enforce it according to its terms." Hartford Underwriters Ins. Co. v. Union Planters Bank, 530 U.S. 1, 6 (2000) (citations and quotations omitted). "The 'plain' in 'plain meaning' requires that [courts] look to the actual language used in a statute, not to the circumstances that gave rise to that language." CBS v. PrimeTime 24 Joint Venture, 245 F.3d 1217, 1224 (11th Cir. 2001).

Finally, Plaintiffs will succeed on the merits of their First Amendment claim. Defendants argue that because the Statute targets speech activities associated with religious institutions and other locales, it is not content-based. However, such an argument was specifically rejected in Police Dep't of the City of Chicago v. Mosely, 408 U.S. 92 (1972), where a restriction barring several categories of speech but allowing "labor picketing" was struck down as an unconstitutional content-based limit of speech. The Statute at issue in this case is necessarily content-based since some of the activities that Plaintiffs seek to engage in – singing in choir, participating in church-based Bible study, serving as a reader of Scripture at services – can only occur in a place of worship. Content-based limits on speech are exacerbated, not cured, by limiting several subjects instead of just one:

> The central problem with Chicago's ordinance is that it describes permissible picketing in terms of its subject matter. Peaceful picketing on the subject of a school's labor-management dispute is permitted, but all other peaceful picketing is prohibited. The operative distinction is the message on a picket sign.... The essence of this forbidden censorship is content control.
> Id. at 95-96 (internal quotations omitted).

The volunteer provision has the effect of preventing core religious speech and activity that actually benefits public safety.

7

Defendants also argue that the plaintiff class lacks standing to challenge the Statute's impact on the churches they attend. Yet, Plaintiffs' religious speech and association is directly impacted, as their Declarations show, and they also have First Amendment overbreadth standing to assert the interests of the churches they attend. The Statute specially targets religious speech on its face, and violates the First Amendment.

C. <u>An Injunction Will Serve the Public Interest By Protecting the Constitutional Rights of 15,000 Citizens and By Furthering Public Safety.</u>

Plaintiffs satisfy the final preliminary injunction requirements because the public interest is furthered when First Amendment freedoms are safeguarded. See <u>Elrod v. Burns</u>, 427 U.S. 347, 373 (1976) (the protection of First Amendment rights is of the highest public interest).

Moreover, allowing Plaintiffs to participate in their faith communities will further public safety. Plaintiffs attach hereto four additional declarations from religious leaders who oppose the Statute on religious and public safety grounds:

- Andrea Shelton is the President of Heartbound Ministries, an organization that works with prison chaplains in the Georgia Department of Corrections to meet the spiritual needs of people in prison and to reduce recidivism.[15] Ms. Shelton, who has worked with many people on the sex offender

---

[15] See Declaration of Andrea Shelton (Exhibit 4).

registry, including Omar Howard, opines that the Statute will do more harm than good from a public safety perspective.

- Richard Hemphill, senior pastor at Trinity Fellowship Church in Marietta, is Plaintiff Andrew Norton's pastor.[16] He describes how church involvement can keep ex-offenders accountable and reduce recidivism.

- Charles Ohrenschall is a member of the vestry of the Church of Jesus Our Shepherd in Norcross.[17] He explains how faith communities help to keep ex-offenders accountable and in compliance with the law. He also opines that the Statute is superfluous since churches have their own mechanisms to protect congregations from sexual abuse.

- Barbara Pritchett is a minister at the Mount Paran North Church of God in Marietta, where she leads an adult Bible study group for formerly incarcerated men and women.[18] She states that the Statute's ban on volunteering will hinder, rather than help, public safety.

D. This Court is the Appropriate Forum to Adjudicate This Matter.

Defendants state that Plaintiffs should file another lawsuit to challenge the ban on volunteering at church. While the term "volunteer" has recently been formally added to § 42-1-15, the matter at hand is not new to this lawsuit. Prior to the enactment of SB 1, many Sheriffs interpreted the prohibition against

---

[16] See Declaration of Richard Hemphill (Exhibit 5).

[17] See Declaration of Charles Ohrenschall (Exhibit 6).

[18] See Declaration of Barbara Pritchett (Exhibit 7).

9

employment at a church to also prohibit volunteering at a church.[19] Plaintiffs specifically sought relief from the ban on volunteering at a church in Paragraph 118 of the Third Amended Complaint, filed June 1, 2007:

> The prohibition against employment at a church is unconstitutionally vague. This prohibition is being interpreted in many jurisdictions to bar Plaintiffs from singing in church choirs, working in soup kitchens, or volunteering for church activities.[20]

Plaintiffs have already filed this federal lawsuit seeking relief from the volunteering ban. It would waste the time of the Court and the parties for Plaintiffs to file a second lawsuit raising claims identical to those currently pending. In the interest of judicial economy, Plaintiffs ask this Court to grant an injunction, thereby preserving the status quo pending adjudication of Plaintiffs' federal claims. Not only is Plaintiffs' choice of forum correct, but it is also the forum best situated to hear this claim.

---

[19]  See *Georgia Sheriffs' Association, Sex Offender Registration Update, 7/07* (stating that pursuant to § 42-1-15, sex offenders "shall not be allowed to work or volunteer at any church, synagogue, or other place of religious worship or at any function or activity promoted, sanctioned, or held by any church, synagogue or other place of religious worship.") (emphasis added) (Exhibit 8).

[20]  See Third Amended Complaint, June 1, 2007.

10

Respectfully submitted this 28th day of July, 2008.

**s/ Sarah Geraghty**

SOUTHERN CENTER
FOR HUMAN RIGHTS
Stephen B. Bright
Ga. Bar No. 082075
Lisa Kung
Georgia Bar No. 430302
Sarah Geraghty
Georgia Bar No. 291393
Gerald R. Weber
Georgia Bar No. 744878
Southern Center for Human Rights
83 Poplar Street, N.W.
Atlanta, Georgia 30303-2122
Telephone: (404) 688-1202
Fax: (404) 688-9440
sbright@schr.org
lkung@schr.org
sgeraghty@schr.org
gweber@schr.org

*Attorneys for the Plaintiffs*

## CERTIFICATION OF COMPLIANCE WITH L.R. 5.1B

Pursuant to L.R. 7.1, I, Sarah Geraghty, hereby certify that this motion has been prepared in compliance with Local Rule 5.1B.

Dated this 28th day of July, 2008.

<u>**s/ Sarah Geraghty**</u>

Sarah Geraghty
(Ga. Bar No. 291393)
Southern Center for Human Rights
83 Poplar Street, N.W.
Atlanta, Georgia  30303-2122
Tel: (404) 688-1202
Fax: (404) 688-9440
sgeraghty@schr.org

CERTIFICATE OF SERVICE

I hereby certify that I have this day served the foregoing *Reply Brief in Support of Motion for Preliminary Injunction* upon Defendants by causing a true and correct copy thereof to be delivered by the Court's ECF filing system to Defendants' counsel of record at the following addresses:

Mr. Joseph Drolet
Ms. Devon Orland
Office of the Attorney General
40 Capitol Square
Atlanta, GA 30334

Mr. David E. Hudson
Hull, Towill, Norman, Barrett & Salley, PC
P.O. Box 1564
Augusta, GA 30903-1564

This 28th day of July, 2008.

<u>s/Sarah Geraghty</u>
Sarah Geraghty
(Ga. Bar No. 291393)
Southern Center for Human Rights
83 Poplar Street, N.W.
Atlanta, Georgia 30303-2122
Tel: (404) 688-1202
Fax: (404) 688-9440

*Attorney for the Plaintiffs*