## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ROME DIVISION

|  |  |  |
|---|---|---|
| WENDY WHITAKER, JOSEPH LINAWEAVER, JANET JENKINS ALLISON, JAMES WILSON, JEFFERY YORK, DEWAYNE OWENS, AL REGINALD MARKS, and LORI SUE COLLINS, | ) ) ) ) ) ) ) ) |  |
| Plaintiffs, | ) ) | **CIVIL ACTION** |
| v. | ) ) | No. 4:06-cv-140-CC |
| SONNY PERDUE, Governor of the State of Georgia in his official capacity, | ) ) ) ) ) |  |
| THURBERT E. BAKER, Attorney General of the State of Georgia in his official capacity, | ) ) ) ) | **FOURTH AMENDED COMPLAINT - CLASS ACTION FOR INJUNCTIVE RELIEF** |
| SCOT DEAN, Chief of Probation, Cedartown, Polk County, Georgia in his official capacity, | ) ) ) ) ) |  |
| CLAY WHITTLE, Sheriff of Columbia County, in his official capacity, on behalf of all Georgia sheriffs, | ) ) ) ) ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) ) |  |

## PRELIMINARY STATEMENT

1.

Plaintiff WENDY WHITAKER and others bring this suit to prevent people on Georgia's sex offender registry – including the elderly and disabled – from being deprived of their homes due to the unfair and arbitrary provisions of Ga. Code Ann. § 42-1-15 ("the Statute") and Ga. Code Ann. § 42-1-12.  Plaintiffs have been convicted of crimes – some of them when they were teenagers for conduct a judge found was not a threat to public safety and did not warrant any time in prison – but they have paid the price and today live law-abiding lives as productive members of the community.  Now they are being punished again. Ga. Code Ann.  § 42-1-15 prohibits persons on the registry from living within 1,000 feet of numerous locations, including all churches, swimming pools, and school bus stops in Georgia.  Since the Statute's effective date of July 1, 2006, an unknown number of people, likely to be in the thousands, have been forced from their homes.  Many more will be forced from their homes absent relief from this Court.  Plaintiffs who become homeless because of the Statute face 10-30 years in prison.  See Ga. Code Ann. § 42-1-12(a)(1), § 42-1-12(a)(16)(B), § 42-1-12(f), § 42-1-12(n) ("the homeless provisions"). Plaintiffs who become homeless twice face *life imprisonment.*  See id.

2.

There are approximately 16,000 registered sex offenders in Georgia. Unlike the sex offender residency requirements of many other states, Georgia does not differentiate between people convicted of violent sexual offenses, such as rape, and people who violated the law by having consensual sexual relations when they were teenagers with someone under the age of consent. Georgia treats everyone like the worst offender. Before July 1, 2006, Georgia already had a law governing where people on the registry could live. See Ga. Code Ann. § 42-1-13 (2006) (prohibiting residency within 1,000 feet of schools, child care facilities, and areas where minors congregate, including parks, recreation facilities, skating rinks, neighborhood centers, gymnasiums, and similar facilities providing programs or services directed toward children). House Bill 1059 ("HB 1059"), signed into law by the Governor on April 24, 2006, substantially revised § 42-1-13, turning the law from one tailored to keep offenders away from children into one that arbitrarily banishes people from their homes and communities.

3.

The ostensible purpose of Ga. Code Ann. § 42-1-15 (2006) was to keep Georgia's children safe from sexual offenses. This is a laudable goal. Yet the 2006 Statute imposed its residency restrictions and other significant penalties on all people on the registry – even those like Plaintiff Wendy Whitaker who is on the registry because, at age 17, she had a single consensual act of oral sex with a

3

15-year-old boy.  For this one act, committed eleven years ago, the now 28-year-old Ms. Whitaker and her husband were forced from their home.  Plaintiff Joseph Linaweaver was 16 when he had a single consensual act of oral sex with a 14-year-old girl.  Six years later, Mr. Linaweaver was ordered to leave his home because it was within 1,000 feet of a school bus stop.  Plaintiff Janet Allison was convicted of being "party to a crime of statutory rape and child molestation" because she did not prevent her 15-year-old daughter from becoming sexually active.  Due to this conviction, Ms. Allison and her family were forced from their home because it was within 1,000 feet of a church.

4.

If Plaintiffs violate Ga. Code Ann. § 42-1-15 by residing within 1,000 feet of a prohibited location, they are subject to arrest and prosecution.  The punishment for failure to comply with Ga. Code Ann. § 42-1-15 is a minimum of 10 years and a maximum of 30 years imprisonment.

5.

The prohibition against living within 1,000 feet of a school bus stop, codified at Ga. Code Ann. § 42-1-15(a)(19)("the school bus stop provision"), has caused enormous confusion.  In May 2006, law enforcement officials began the process of evicting thousands of people from their homes based on their interpretation of this provision.

4

6.

Acting pursuant to their interpretation of the law, in May and June 2006, sheriffs' deputies ordered thousands of sex offenders to leave their homes by July 1, 2006. After receiving official notices to leave – some of them hand-delivered by sheriffs' deputies in the middle of the night – an unknown but significant number of people on the registry sold their homes or broke their leases, left their jobs, and uprooted their families to re-locate outside of Georgia.

7.

On June 27, 2006, this Court granted Plaintiffs' Motion for a Temporary Restraining Order ("TRO") with respect to the school bus stop provision. On June 29, 2006, the Court extended this relief to the Plaintiff class. The TRO was in effect until July 25, 2006. On July 25, 2006, this Court adopted the definition of "school bus stop" urged by Defendants Perdue and Baker. Under that definition, at the time of the Court's ruling, there were no school bus stops in Georgia since none had been designated by the actual members of local school boards (as opposed to their employees or agents).

8.

On July 25, 2006, the school board in Columbia County designated its bus stops for purposes of the Statute. All sex offenders in Columbia County faced eviction. The school boards in Bulloch and Chatham counties also designated bus stops. All sex offenders in those counties faced immediate eviction.

5

9.

The school bus stop provision is being held in abeyance in the three counties while this case is resolved.  Absent relief from this Court, the approximately 400 people on the sex offender registry in Chatham, Columbia, and Bulloch counties will be banished from these counties.

10.

Ga. Code Ann. § 42-1-15 grants local school boards the power to instantly evict people from their homes and banish them from the county.

11.

There continues to be confusion about the school bus stop provision.  Even after this Court's Order of July 25, 2006, several people on the registry were told that they must move because they lived within 1,000 feet of school bus stops in counties where no "school bus stops" exist under the Statute.

12.

Ga. Code Ann. § 42-1-15 also prohibits people on the registry from working within 1,000 feet of a church, child care facility, or school.

13.

On May 13, 2008, the Governor signed SB 1 into law.  SB 1, now codified, in part, at Ga. Code Ann. § 42-1-15, made two changes to Georgia's sex offender residence restrictions: (a) it expanded the list of "areas where minors congregate"

to include "public libraries," and (b) it carved out a narrow exception for certain homeowners. The majority of people on the registry will still have to comply with the prohibition against living within 1,000 feet of schools, parks, churches, pools, and other locations.

14.

SB 1 also modified the employment restrictions of Ga. Code Ann. § 42-1-15 by carving out an exception for employees if a church, child care center, or other prohibited location locates itself within 1,000 feet of a Plaintiff's established place of employment. Finally, SB 1 adds an additional prohibition against "volunteer[ing]" at or within 1,000 feet of a school, child care facility, or church.

15.

In addition to imposing onerous residency and employment restrictions, the Statute impermissibly chills the right to exercise one's religion by making it a felony punishable by a minimum of 10 years imprisonment to "loiter" at or near a church or other place of religious worship. Many Plaintiffs rationally feel that they cannot go to church on Sunday, attend Wednesday or Friday night prayer groups, or go to weddings or funerals for fear that they will be thought to be loitering at a place of public religious worship. The penalty for loitering is simply too severe to risk participation in religious activities.

7

16.

Plaintiffs are persons subject to the residency, working, volunteering, and loitering restrictions of Ga. Code Ann. § 42-1-15.  Plaintiffs bring this action on behalf of themselves and all persons subject to the Statute.  Plaintiffs respectfully ask this Court to permanently enjoin Defendants from enforcing such portions of the Statute as are necessary to protect Plaintiffs' constitutional rights.

17.

The Statute's enforcement should be enjoined for the following reasons:

a.  The Statute violates U.S. Const. art I, § 10, prohibiting Ex Post Facto laws;

b.  The Statute violates the Due Process Clause because it is vague and overbroad;

c.  The Statute violates the substantive component of the Due Process Clause;

d.  The Statute violates the Free Exercise Clause and the right to freedom of association;

e.  The Statute violates the Takings Clause.

## PARTIES

### Plaintiffs

18.

Plaintiff WENDY WHITAKER is a 28-year-old woman who, at the time this lawsuit was filed, lived in McDuffie County, Georgia in a home that she and her husband purchased.

19.

When Ms. Whitaker was a 17-year-old high school student, she engaged in a consensual act of oral sex with a 15-year-old male.  Both were sophomores in high school at the time.  Ms. Whitaker is white; the other student was African-American.  Ms. Whitaker was arrested, charged with sodomy, and advised to plead guilty, and she ultimately completed five years on probation.  Her conviction requires her to register as a sex offender.

20.

Ms. Whitaker and her husband were required to move to comply with Georgia's previous sex offender residence law, Ga. Code Ann. § 42-1-13 (2006). Their residence in Columbia County was located within 1,000 feet of a church that, at the time, operated a day care program.  For over two years, Ms. Whitaker could not reside in her lawfully purchased home.

21.

In early 2006, the Whitakers moved in with Mr. Whitaker's brother in Thomson, Georgia. They had to pay rent and expenses in addition to mortgage. A school bus stopped within 1,000 feet of the house, making the Whitakers' residence an unfit accommodation under the Statute, as it was interpreted in the spring of 2006 by Sheriffs' offices throughout the State. Ms. Whitaker was spared from eviction when this Court adopted the definition of "school bus stop" urged by Defendants Perdue and Baker.

22.

In 2007, the Whitakers moved to South Carolina because of the difficulty they experienced in finding a residence that complied with the sex offender law in Georgia. In approximately March 2008, following the decision in *Mann v. Dep't of Corrections*, 282 Ga. 754 (2007), the Whitakers moved back into their home in Columbia County, Georgia.

23.

In July 2008, a Colombia County law enforcement official once again ordered Ms. Whitaker to leave her home due to Ga. Code Ann. § 42-1-15. The home is within 1,000 feet of a church and Ms. Whitaker's name was not on the deed as of July 1, 2006. Even though Ms. Whitaker was married at the time the home was purchased, helped to purchase the home, and contributed to mortgage and property tax payments, law enforcement officials gave her 72 hours to leave.

10

Ms. Whitaker now seeks a preliminary injunction permitting her to remain in her home.  Absent this Court's intervention, Ms. Whitaker is in immediate danger of being evicted from her home.

24.

Ms. Whitaker and her husband used to attend church services on Sundays. They no longer do so because of Ms. Whitaker's fear that she will be accused of loitering within 1,000 feet of a church, or volunteering at a church, crimes punishable under the Statute by 10-30 years imprisonment.

25.

Plaintiff JOSEPH LINAWEAVER is a 24-year-old man who lived with his parents in Columbia County, Georgia.

26.

In 2000, when Mr. Linaweaver was 16, he engaged in a consensual act of oral sex with a 14-year-old female classmate while on a school bus.  Mr. Linaweaver pled guilty to sodomy and was sentenced to five years on probation. Because of the conviction, he had to register as a sex offender.

27.

On June 1, 2006, the Columbia County Sheriff's Department ordered Mr. Linaweaver to leave his home by June 30 because it was within 1,000 feet of a school bus stop.  Mr. Linaweaver could not find anywhere to live that met the Statute's requirements; nor could he find employment at any job that did not

11

violate the Statute's provisions.  He planned to leave his family and move out of state rather than face being homeless and jobless in Georgia.  Even his plans to move out of state, however, were untenable in June 2006.  Before leaving the State, Mr. Linaweaver had to arrange to transfer his probation, a process that can take months under the best of circumstances.  As probation offices across the State were being inundated with hundreds of requests to move and/or transfer probation before July 1, 2006, moving out of Georgia was not an option.  In the interim, Mr. Linaweaver had nowhere to go.

28.

On July 25, 2006, the local school board in Columbia County officially designated all of its school bus stops, making virtually all of Columbia County off limits to anyone on the registry.  Mr. Linaweaver faced immediate eviction.

29.

Plaintiffs and the Sheriff of Columbia County subsequently entered a temporary consent order to prevent enforcement of the school bus stop provision until this Court considers the constitutionality of the provision.  It is unknown how long Plaintiffs in Columbia County will be able to remain in their homes.

30.

Fearful that he would be unable to maintain a residence or employment because of the Statute, Mr. Linaweaver moved out of state.  Mr. Linaweaver's entire family lives in the Augusta area.  Mr. Linaweaver would like to return to

12

Columbia County to be reunited with his family, but he knows that he could be evicted at any time if he returns home.

31.

Plaintiff JANET JENKINS ALLISON is a resident of Lumpkin County, Georgia. She is married and is the mother of five children, ages 26, 24, 21, 20 and 18. Ms. Allison lives with her husband, a diesel mechanic, and one of her sons.

32.

Ms. Allison was convicted of being party to a crime of statutory rape and party to a crime of child molestation in 2002. Ms. Allison has a teenage daughter who was sexually active and became pregnant at age 15. The indictment in Ms. Allison's case alleged that Ms. Allison did not do enough to stop her daughter's sexual activity. It also alleged that Ms. Allison permitted her daughter's teenage boyfriend to move into the house after her daughter became pregnant and the young couple decided to marry. (They later did marry.) For this, Ms. Allison is a registered sex offender. She was sentenced to fifteen years of probation.

33.

On June 15, 2006, a deputy from the Lumpkin County Sheriff's Office came to Ms. Allison's door and told her she had to leave her home of four years by July 1 because she lived within 1,000 feet of a school bus stop. Ms. Allison did not know where her family would go. In the weeks before July 1, 2006, they drove around White, Pickens, Dawson, Lumpkin, and Gilmer counties looking for a

new home. They did not find any home that complied with the Statute's requirements. They looked in several mobile home parks, but found most of them had been made off-limits by the Statute because of playgrounds, swimming pools, and school bus stops.

34.

Ms. Allison was later forced to leave her home because it was within 1,000 feet of a church. She also lost her job because it was within 1,000 feet of a church.

35.

Ms. Allison currently rents her home pursuant to a written lease. If the local school board designates its bus stops, or if a child care center, swimming pool, or other prohibited location moves within 1,000 feet of her home, she will be evicted again.

36.

Ms. Allison was required to attend counseling as a condition of probation. Ms. Allison's court-ordered treatment provider told her and other members of the treatment group that under the Statute, they would not be able to attend church because they could be prosecuted.

14

37.

Plaintiff JAMES WILSON is a 25-year-old resident of Fulton County. At the time this lawsuit was filed, he was a senior at Georgia State University pursuing a dual degree in accounting and finance. He had worked at Miller, Ray, Houser & Stewart, an accounting firm in Atlanta, for three years. In 2006, the firm offered him a position upon graduation.

38.

In 2002, as a freshman at New York University in New York City, Mr. Wilson pled guilty to sexual abuse in the first degree for inappropriately touching an adult female college friend while intoxicated at a freshman party. The court sentenced him to five years of probation, which he completed in August 2007. Mr. Wilson was designated a level I sex offender, the lowest possible designation, reflecting the unlikeliest possibility of re-offending. He has never been arrested before or since and complied with all terms of his probation. His criminal case file contains letters from approximately 40 individuals (former teachers, employers, professors, friends, etc.) attesting that the incident was an aberration and out of character for Mr. Wilson.

39.

Mr. Wilson is a co-owner of his home with his parents. It is within 1,000 feet of a place where a school bus stops.

40.

For the six weeks previous to July 1, 2006, Mr. Wilson and his family searched the metro Atlanta area for any accommodation that would comply with the Statute.  All they found was a motel in Clayton County, in an industrial area.

41.

Mr. Wilson was spared eviction when this Court adopted the definition of "school bus stop" urged by Defendants Perdue and Baker, but he faces other restrictions under the sex offender law, including the employment restriction, and the prohibition against volunteering and loitering.  If he ever wishes to move residences, he will have to comply with the 1,000-foot residence restrictions.

42.

Plaintiff JEFFERY YORK is a 24-year-old resident of Polk County.  At the time the Statute went into effect, he lived with his grandmother in Cedartown, Georgia.

43.

When Mr. York was 17 years old, he dated a 15-year-old male.  In 2003, Mr. York pled guilty to one count of sodomy for engaging in a consensual act of oral sex with the 15-year-old.  He was sentenced to five years of probation.

44.

Before the Statute went into effect, Mr. York received two letters from the Polk County Sheriff's Department stating his home could be within 1,000 feet of a bus stop. (Polk County had not yet mapped its school bus stop routes.) The Sheriff's Department informed him that if his home was within 1,000 feet of a school bus stop, he would have to move immediately. Mr. York was spared eviction when this Court adopted the definition of "school bus stop" urged by Defendants Perdue and Baker.

45.

Mr. York was later required to move, however, because his home was within 1,000 feet of a child care center. He was given a week to find another place to live. Unable to find any residence that complied with the Statute, Mr. York moved to a rented trailer in the woods without electricity or running water. He lived there for nearly a year.

46.

In or around December 2007, the Polk County Sheriff's Office told Mr. York that he could move to his grandmother's house. Mr. York does not own a home. If a church, swimming pool, or other prohibited location moves within 1,000 feet of his residence, he will have to move. Mr. York lives within 1,000 feet of a school bus stop. If the Polk County School Board designates the school bus stops in Polk County, Mr. York will have to move.

17

47.

Mr. York was offered a job at a motel.  He was unable to accept this job and other jobs because they were within 1,000 feet of prohibited locations.

48.

Plaintiff DEWAYNE OWENS is a 24-year-old male who was incarcerated at Calhoun State Prison in Calhoun County at the time this lawsuit was filed.

49.

In 1998, when Mr. Owens was 13 years old, he was convicted of incest.  Mr. Owens served nearly four years in a juvenile facility and was released.  He has never been charged with any additional crime before or since.  He was found, however, to have violated the terms of his probation in 2004 by: (a) looking at a magazine with sexual content, and (b) being in the presence of his young cousins (no allegations of inappropriate conduct).  He was sent back to prison.

50.

At the time this lawsuit was filed, Mr. Owens had a tentative parole date of December 2006.  He could not find a parole address that complied with the Statute.  He could not stay with his family because of a school bus stop.  He could not find any other private residence that complied with the Statute.  Because of the Statute, he was unable to find a single halfway house or shelter in the State to accept a male on the sex offender registry.

18

51.

After this Court adopted the definition of "school bus stop" urged by Defendants Perdue and Baker, Mr. Owens was able to submit his grandmother's address as his parole residence. He has since been released from prison and lives with his grandmother in Grady County, Georgia. If the local school board in his county designates its bus stops, or if any prohibited location moves within 1,000 feet of his residence, Mr. Owens will have to move immediately.

52.

Plaintiff AL REGINALD MARKS is a 22-year-old who lives in Cobb County, Georgia. Mr. Marks lives with his mother, Carol King, and his father, Alphonso Marks.

53.

In 2000, when he was 14 years old, Al Reginald Marks was charged with hand-to-genital and mouth-to-genital sexual contact with the seven-year-old son of a family friend. This was a one-time incident with no allegations of force. Mr. Marks pled guilty to child molestation and was sentenced to probation. He has served seven years on probation without incident.

54.

In 2003, after Georgia passed its first residency restriction law, authorities notified the Marks family that their house sat within 1,000 feet of a swimming pool. When informed of the problem, the Marks family moved to their current

home, a rental residence in Cobb County.  It took the family one-and-one-half years to pay their debt from breaking the lease.

55.

In a letter dated May 24, 2006, the Cobb County Sheriff's Department ordered Mr. Marks to leave his home because it was within 1,000 feet of a school bus stop.

56.

For the six weeks prior to July 1, 2006, the Marks family searched for a place to live.  They spent days driving around Georgia, using at least one tank of gas per day and visiting potential locations in DeKalb, Paulding, Douglas, and Bibb counties.  They could not find a residence that complied with Ga. Code Ann. § 42-1-15 as it was then interpreted by law enforcement.

57.

Mr. Marks remained in his home because this Court adopted the definition of "school bus stop" urged by Defendants.  Mr. Marks does not, however, own his home.  If the school board designates bus stops or if a prohibited location moves in within 1,000 feet of the home, Mr. Marks will have to move.  Mr. Marks is fearful of entering a lease because he faces the possibility of being uprooted and forced to break the lease due to the Statute.

58.

At the time this lawsuit was filed, Mr. Marks worked seven days per week at McDonald's and was training to become a manager. He was required to leave that job due to a playground on the premises.

59.

Mr. Marks got a job at another fast food restaurant in 2007. He was required to leave that job because there was a church within 1,000 feet of the restaurant.

60.

Plaintiff LORI SUE COLLINS was a resident of Polk County at the time this lawsuit was filed. Until June 2006, Ms. Collins lived at the Door of Hope Ministry in Rockdale County. Door of Hope is a faith-based halfway house for people recently released from prison.

61.

In 2002, Ms. Collins was convicted of statutory rape for having consensual sex with a 15-year-old boy. Ms. Collins, who was 39 at the time, served three years in prison for her offense. While in prison, Ms. Collins lived in the honor dorm, served as assistant to the chaplain, edited a religious newsletter, and received a college diploma with honors.

62.

In June 2006, Ms. Collins received a letter from the Rockdale County Sheriff's Office stating she would have to leave Door of Hope because a school bus stop was within 1,000 feet of the residence. For three weeks thereafter, Ms. Collins spent nearly every waking moment trying to find a place to live. She drove around five counties (Hall, Barrow, Newton, Rockdale, and Henry) in search of a residence conforming to the requirements of the Statute. She searched the Internet. She searched newspapers. She could not find anything. At one point, she thought she had found a place to live in an industrial area in Covington, Georgia. It turned out, however, that there was a school bus stop within 1,000 feet of the house.

63.

Ms. Collins considered staying with various family members. There was a school bus stop within 1,000 feet of her daughter's home. A school bus stop also prevented her from living with her aunt in Augusta. Her grandparents, who live in a rural area outside of Augusta, offered to take her in, but there was a school bus stop within 1,000 feet of their property as well.

64.

Ms. Collins has a second daughter in South Carolina.  Ms. Collins asked her probation officer if she could move to South Carolina.  She was told she would have to ask for a transfer of probation under an interstate compact and that this could take up to six months.

65.

In June 2006, Ms. Collins moved to the Door of Hope's other residential ministry in Polk County, Georgia.  This residence also turned out to be within 1,000 feet from a school bus stop.

66.

Ms. Collins was spared eviction when this Court adopted the definition of "school bus stop" urged by Defendants Perdue and Baker.  Ms. Collins was later required to leave Door of Hope; it met the Statute's definition of a "church."

67.

Ms. Collins currently rents a home in Hampton, Georgia pursuant to a valid written lease.  She pays monthly rent.  If the local school board designates its school bus stops, or if a prohibited location moves within 1,000 feet of the residence, she will be immediately evicted.  As a renter, she faces the possibility of being repeatedly uprooted and forced to break leases and abandon homes to comply with the Statute.

23

68.

The Statute has also prevented Ms. Collins from obtaining employment at a church.  Because of the Statute, Ms. Collins was unable to apply for a job opening at the media ministry at Mt. Paran Church of God.  Ms. Collins would like to seek employment at this church or another church or ministry to minister to persons in need of spiritual guidance.  She cannot do so because of the Statute.

69.

Ms. Collins has volunteered with a number of church groups.  She has ministered to people at nine prisons in Georgia and performed other volunteer activities at church.  Ms. Collins wishes to continue her volunteer work at church, but if she does so, she risks prosecution and 10-30 years in prison.

**Defendants**

70.

Defendant SONNY PERDUE is the Governor of the State of Georgia.  As chief executive of the State of Georgia, he has the duty to "take care that the laws are faithfully executed."  Ga. Const. art. V, § 2, ¶ II.  He is sued in his official capacity.  Plaintiffs ask that Defendant PURDUE be enjoined from enforcing such portions of the Statute as are necessary to protect Plaintiffs' constitutional rights.

24

71.

Defendant THURBERT BAKER is the Attorney General of the State of
Georgia.  He is charged by law with enforcement of the Georgia Code and the
defense of the constitutionality of the laws of Georgia.  He is sued in his official
capacity.   Plaintiffs ask that Defendant BAKER be enjoined from enforcing such
portions of the Statute as are necessary to protect Plaintiffs' constitutional rights.

72.

Defendant SCOT DEAN is the Chief Probation Officer in Cedartown in
Polk County, Georgia.  He is charged with supervising probationers, including
Plaintiff York.  Georgia law authorizes Defendant DEAN to arrest a probationer
if he believes the probationer has violated probation in a material respect,
including by violating a law such as the Statute.  See Ga. Code Ann. § 42-8-38.
Defendant DEAN is sued in his official capacity.  Plaintiffs ask that Defendant
DEAN be enjoined from enforcing such portions of the Statute as are necessary to
protect Plaintiffs' constitutional rights.

73.

Defendant CLAY WHITTLE is the Sheriff of Columbia County.  He is
charged with the common law and statutory duties of the office of sheriff to
enforce the laws of Georgia.  He is sued in his official capacity on behalf of a class
of all Georgia Sheriffs.  This Court has certified a Defendant class of Georgia
Sheriffs for the limited purpose of effectuating any preliminary or permanent

injunctive relief that may be ordered.  Plaintiffs ask that Defendant WHITTLE and all Georgia sheriffs be enjoined from enforcing such portions of the Statute as are necessary to protect Plaintiffs' constitutional rights.

## JURISDICTION AND VENUE

74.

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 because the action arises under and is brought under the Civil Rights Act of 1871, 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution.

75.

Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because at least one Defendant resides in this judicial district.  This District also is an appropriate venue for this action under 28 U.S.C. § 1391(b)(2) because at least one Plaintiff lives in the district.

## ALLEGATIONS

76.

Under Georgia law, persons convicted of certain sex offenses and certain crimes against minors must register as sex offenders.  See Ga. Code Ann. § 42-1-12(e).  Such persons must register with the sheriff in the county where they live, work, and/or attend school.  All such persons must have their photographs, addresses, and other identifying information posted on the website of the Georgia Bureau of Investigation.

77.

In June 2003, Georgia's General Assembly passed a law restricting the locations where people on the sex offender registry could live.  See Ga. Code Ann. § 42-1-13 (2006).  According to this law, no one on the registry could live within 1,000 feet of the following locations: schools, child care facilities, and areas where minors congregate, including public and private parks, recreation facilities, playgrounds, skating rinks, neighborhood centers, gymnasiums, and similar facilities providing programs or services directed towards persons under 18.  The penalty for knowingly violating the residency restrictions was imprisonment for one to three years.

78.

Many people on the registry, including Plaintiff Al Marks, were required to leave their homes to comply with the terms of the 2003 law.

79.

In 2006, the General Assembly passed another sex offender residence law, this time with the purpose of ridding the State of all of its (then) 12,000 sex offenders.  House Majority Leader Jerry Keen, the chief sponsor of HB 1059, stated:

- "We want those people running away from Georgia.  Given the toughest laws here, we think a lot of people could move to another state."

- "If it becomes too onerous and too inconvenient, they just may want to live somewhere else.  And I don't care where, as long as it's not in Georgia."

- "Candidly, Senators, they will in many cases have to move to another state."

80.

The legislators, however, were not fully informed.  People on the registry who are on probation and parole cannot simply move to another state.  They must acquire the permission of their probation or parole officers, and arrangements must be made for their supervision in another state before they may leave Georgia.  Thus, the Statute does not force people out of the State; it forces them into the street.

81.

HB 1059 was signed into law by Governor Sonny Perdue on April 26, 2006.

The Statute, codified at Ga. Code Ann. § 42-1-15, stated in pertinent part:

> (a) No individual required to register pursuant to Code Section 42-1-12 <u>shall reside or loiter within 1,000 feet of any child care facility, church, school, or area where minors congregate</u>. Such distance shall be determined by measuring from the outer boundary of the property on which the individual resides to the outer boundary of the property of the child care facility, church, school, or area where minors congregate at their closest points.
>
> (b)(1) No individual who is required to register under Code Section 42-1-12 <u>shall be employed by any child care facility, school, or church or by any business or entity that is located within 1,000 feet of a child care facility, a school, or a church.</u>

82.

The 2006 Statute defined "areas where minors congregate" as: "all public and private parks and recreation facilities, playgrounds, skating rinks, neighborhood centers, gymnasiums, school bus stops, and public and community swimming pools." <u>See</u> Ga. Code Ann. § 42-1-12(a)(3).

83.

The Statute defined the term "school bus stop" as "a school bus stop as designated by local school boards of education or by a private school." <u>See</u> Ga. Code Ann. § 42-1-12(a)(19).

84.

Ga. Code Ann. § 42-1-15 severely restricts the locations in which people on the registry can live.  It does this by adding the requirement that sex offenders cannot live within 1,000 feet of any church, swimming pool, or school bus stop. In addition, under the 2006 Statute no one could <u>work</u> at or within 1,000 feet of a child care facility, school, or church.  Under the 2006 Statute, no one on the registry could <u>loiter</u> within 1,000 feet of a child care facility, church, school, public or private park, recreation facility, playground, skating rink, neighborhood center, gymnasium, school bus stop, public swimming pool, or community swimming pool.

85.

In 2008, the General Assembly further expanded the residence restrictions by adding "public libraries" to the list of "areas where minors congregate."  <u>See</u> § 42-1-12(a)(3).

86.

The General Assembly changed the law again in 2008.  Pursuant to SB 1, now codified, in part, at Ga. Code Ann. § 42-1-15, Plaintiffs who own homes will not be required to relocate if: (a) they have proof that they owned and resided in their homes prior to July 1, 2006, or (b) a child care center, church, or other prohibited location moves in within 1,000 feet of a Plaintiff's residence.  There is no provision, however, to protect the rights of persons who rent their homes.  <u>C.f.</u>

Iowa Code § 692A.2A (2006) (exempting those who owned or rented homes
within 2,000 feet of schools from residence requirements).

87.

Ga. Code Ann. § 42-1-15 applies to everyone on the registry without
exception.  There is no procedure to apply for a hardship exemption based on
illness, advanced age, financial hardship, or disability.

88.

Ga. Code Ann. § 42-1-15 has had a profound effect on the elderly and
disabled people who must immediately leave their homes if they live in a
prohibited location.  This is next to impossible for people like Jeff Kennedy, who
is blind; William Evans, who is missing a leg, had a heart attack, and is in a
wheelchair; and Herman Williams, who is 81 years old, has numerous health
problems, and could not find anywhere for him and his 78-year-old wife to live.

89.

The following elderly and/or severely disabled persons have faced
eviction because they lived within 1,000 feet of a church in violation of the
Statute:

> (a) <u>John Doe I</u>: John Doe I was a resident of a nursing home in south
> Georgia.  He had end-stage heart disease with a prognosis of six months or
> less to live.  He was in hospice care at the time his family was informed of
> his imminent eviction.  He died a short time later.

> (b) <u>John Doe II</u>: John Doe II is a resident of a nursing home in Georgia.
> John Doe II is profoundly mentally and physically disabled by

Huntington's disease, a degenerative, neurological disease that causes mental deterioration, severe problems with balance and coordination, dementia, halting and slurred speech, and eventually, death. Mr. Doe rocks back and forth in his chair, his speech is severely impaired, and he cannot walk without assistance. John Doe II has no family to care for him.

(c) <u>John Doe III</u>: John Doe III is a 73-year-old man with Alzheimer's disease and Parkinson's disease. Mr. Doe cannot recognize members of his own family. He lives in a nursing home in a secured unit for patients with dementia.

(d) <u>John Doe IV</u>: John Doe IV is a 64-year-old man who resides in a nursing home in south Georgia. His test scores place him at or near the bottom of the mild range of mental retardation. He also displays signs of organic brain damage. Mr. Doe is confined to a wheelchair. His health problems require 24-hour care. Mr. Doe does not have any family to care for him, nor does he have resources to move elsewhere.

(e) <u>John Doe V</u>: John Doe V is a 68-year-old man who resides in a nursing home in south Georgia. Mr. Doe suffered a major stroke in 2004 and has required 24-hour care since then. In addition to the stroke, Mr. Doe has frequent seizures and heart problems. Mr. Doe's family is not able to care for him.

(f) <u>John Doe VI</u>: John Doe VI, age 82, has Alzheimer's disease. John Doe VI lives with his 77-year-old wife. Mr. Doe and his wife have been married for 61 years. As the Alzheimer's disease progresses, Mr. Doe is losing the power of speech and cannot recognize family members. Due to his weakened physical condition, he spends most of the day resting in bed. Mr. Doe requires 24-hour care and is never left alone.

(g) <u>John Doe VII</u>: John Doe VII is 102 years old. He was released from prison a decade ago. He now lives with his family. Mr. Doe's house is within 1,000 feet of a church.

90.

Although they pose no danger to anyone – John Doe I died shortly after he was instructed to move – the Statute requires these disabled people to move immediately from the prohibited location or face prison.  In 2006, Plaintiffs' counsel obtained consent orders staying these evictions while the Court considered whether they were constitutional.  Absent relief from this Court, those who are still living will be forced from their homes and nursing homes.

91.

Ga. Code Ann. § 42-1-15 does not provide for individualized justice.  It provides no process to distinguish between people on the registry who are dangerous to children and those who are not.  The same residence restrictions apply to Plaintiff Wendy Whitaker, convicted of consensual sexual activity with a boy of like age when she was 17, and adult felons convicted of violent crimes such as rape.  The Statute contains no "safety valve" provision to permit persons such as Plaintiffs Whitaker, Linaweaver, Allison, and others to appeal to a court to determine whether the residency restrictions are appropriate for them.

92.

Ga. Code Ann. § 42-1-12(a)(19), the school bus stop provision, has produced mass confusion and chaos.  After HB 1059 was signed by the Governor on April 24, 2006, nearly all 159 sheriffs' offices in the State made preparations for the enormous task of implementing the law.  All over Georgia, law enforcement

officers painstakingly mapped hundreds of thousands of school bus stops;

followed the routes of school buses; measured the distance between sex

offenders' residences and the nearest bus stop; hired personnel to enforce this

provision; diverted officers from other departments; and notified all or nearly all

sex offenders in their counties that they would have to leave their homes.

93.

At the preliminary injunction hearing held in this case on July 11 and 12,

2006, law enforcement officers from ten different county sheriffs' offices testified

that the Statute would force all or nearly all sex offenders in their respective

jurisdictions out of their homes. Sheriff Ted Paxton testified that all 60 people on

the registry in Forsyth County would have to move. Investigator Russell Finley

testified that in Cobb County, all but 4 of the approximately 200 people on the

registry would have to move. In Bibb County, Captain David Davis testified that

222 of the 230 people on the registry would be required to move. DeKalb County

officials testified that all 490 registered sex offenders in that county would have

to move. Corporal Karen Pirkle testified that 277 of the 278 people on the

registry and currently living in Gwinnett County would be affected by the bus

stop restriction and would have to move. In Cherokee County, Sergeant Jay

Baker testified that 88 of 95 people would have to move. In Houston County,

Charlene Giles testified that the Sheriff's office looked at 75 of the county's 136

people on the registry, and discovered that all but 4 would have to move.

Newton County Lieutenant Ezell Brown estimated that 98% of his county's 127 people on the registry would have to move.  Investigator Gene Higdon of Rockdale County testified that 51 of the 52 people on the registry in his county would have to move.

94.

The law enforcement officers listed above all testified that their offices intended to enforce the school bus stop provision.  Sheriff Paxton, for example, stated that his office notified sex offenders about the school bus stop provision and that, had this Court not issued a temporary restraining order, on July 1, 2006, his office would have given registrants 72 hours to vacate their homes or face arrest.  The Cobb County Sheriff's Office had already directed most of its 200 sex offenders, including Plaintiff Al Marks, to vacate by July 1.  Corporal Stephen Lifland testified that the DeKalb County Sheriff's Office had imminent plans to "start arresting" people who violated the school bus stop provision, starting on July 3, 2006.

95.

The school bus stop provision continued to cause confusion even after this Court adopted the definition of "school bus stop" urged by Defendants Perdue and Baker.  Plaintiffs have been directed to move due to the school bus stop provision in counties where no "school bus stops" exist.

35

96.

The school boards in at least three counties have designated school bus stops. About 400 Plaintiffs live in these counties. Absent relief from this Court, many of these people will be evicted from their homes.

97.

School bus stops can change at a moment's notice depending on when children move into and out of neighborhoods, get cars of their own, or change schools. School boards can and likely will change bus stops frequently. This renders it virtually impossible for anyone on the registry to find a home. A bus stop may appear within 1,000 feet of the residence at any time.

98.

School bus stops are usually unmarked. The measurements of a school bus stop are unclear; there is no way to know where a stop begins and ends so that one may measure 1,000 feet from it.

99.

The school bus stop provision and other aspects of the Statute have broken families apart. Parents have had to move away from their children. People taking care of elderly parents or terminally ill spouses have been required to move.

100.

In many cases, instead of banishing people beyond state lines, Ga. Code Ann. § 42-1-15 has simply rendered people homeless and unaccounted for within the State of Georgia.  Many Plaintiffs are stuck in an impossible situation: they are subject to prosecution if they live in prohibited locations, they cannot find alternative residences, and they cannot leave the State without prior approval.

101.

The Statute has forced hundreds of Plaintiffs from their homes, but Georgia's new sex offender law also prohibits them from being "homeless."  Ga. Code Ann. § 42-1-12 requires people on the registry to provide law enforcement with certain "required registration information," including their address.  See Ga. Code Ann. § 42-1-12(a)(16)(B).  The term "address" is defined as "the street or route address of the sexual offender's residence."  See § 42-1-12(a)(1).  Ga. Code Ann. § 42-1-12(a)(1) specifically states: "[h]omeless does not constitute an address."  The penalty for failure to provide the required registration information – including an address that meet's the Statute's requirements – is a minimum of 10 and a maximum of 30 years in prison.  See § 42-1-12(n)(1-3).  A second offense carries a sentence of life imprisonment.  See Ga. Code Ann. § 42-1-12(n)(1-3).  Many Plaintiffs have been arrested for the status of being homeless.

## CLASS ACTION ALLEGATIONS

### 102.

Plaintiffs bring this class action pursuant to Rules 23(a) and (b)(2) of the Federal Rules of Civil Procedure on their behalf and on behalf of a class similarly situated and affected during the pendency of this lawsuit and in the future.  The class is defined as all persons who are registered, are required to register, or in the future will be required to register as sex offenders pursuant to Ga. Code Ann. § 42-1-12.

### 103.

The requirements of Rule 23(a) are met with respect to the class.

### 104.

The members of this class are so numerous that their joinder is impractical. The class consists of approximately 16,000 people.

### 105.

There are questions of law and fact common to the class, specifically whether the Statute violates rights secured by the United States Constitution. The questions of law and fact common to the class as a whole concern the constitutionality and lawfulness of the Statute.  For example, there are common questions of law and fact concerning the lawfulness of each of the following matters:

a. whether the Statute violates U.S. Const. art I, § 10, prohibiting Ex Post Facto laws;

b. whether the Statute violates the Due Process Clause because it is vague and overbroad;

c. whether the Act violates the substantive component of the Due Process Clause;

d. whether the Statute violates the Free Exercise Clause and the right to freedom of association;

e. whether the Statute violates the Takings Clause.

106.

The Statute challenged in this action applies with equal force to the named Plaintiffs and all members of the class so that the claims of the named Plaintiffs are typical of those of the class. All class members are subject to the Statute's restrictions absent the requested relief.

107.

The named Plaintiffs fairly represent and adequately protect the interests of the class as a whole. Plaintiffs are persons on Georgia's sex offender registry. Plaintiffs, like others in the class, are required to abide by residence and employment restrictions and/or to cease participation in religious activities. They possess the requisite personal interest in the subject matter of the lawsuit and possess no interests adverse to other class members.

108.

Plaintiffs are represented by counsel experienced in civil rights class action litigation.  The named Plaintiffs and the class members are represented by attorneys at the Southern Center for Human Rights, a privately funded, nonprofit organization with extensive experience in complex class action litigation. Plaintiffs' counsel have the resources, expertise, and experience to effectively prosecute this action.

109.

The requirements of Fed. R. Civ. P. 23(b)(2) are met.  Defendants have acted in a way generally applicable to the class the Plaintiffs represent, thereby making preliminary and permanent injunctive relief and corresponding declaratory relief appropriate for the class as a whole pursuant to Fed. R. Civ. P. 23(b)(2).

## CLAIMS FOR RELIEF[1]

### COUNT ONE

### VIOLATION OF U.S. CONST. ART I, § 10 PROHIBITING EX POST FACTO LAWS

110.

Plaintiffs incorporate herein and re-allege, as if fully set forth herein, the allegations of ¶¶ 1-69 and ¶¶ 76-109.

111.

Ga. Code Ann. § 42-1-15 was enacted after the named Plaintiffs and thousands of other Plaintiffs committed their crimes, were punished, and served their sentences.  The Statute applies retroactively to them.

112.

The Statute was enacted with retributive and punitive legislative intent.  In addition, the effect of the Statute is punitive.  Ga. Code Ann. § 42-1-15 punishes Plaintiffs for crimes for which they have already been punished by forcing them to leave their homes, break their leases, and leave their families.  Plaintiffs are

---

[1]    Plaintiffs preserve for appeal all of the claims set forth in their Second Amended Complaint that were dismissed by the Court's Order of March 30, 2007.  Plaintiffs do not waive their right to appeal these claims by not including them herein.

retroactively required to comply with residence and employment restrictions. The Statute banishes Plaintiffs from their homes and communities.[2]

113.

Thousands of Plaintiffs entered plea agreements to sex offenses prior to July 1, 2006. At the time these Plaintiffs entered plea agreements, Georgia's sex offender law did not include the residency and employment restrictions now imposed upon them. The changes to Georgia's sex offender residence and employment laws enacted after Plaintiffs' plea agreements were accepted violate the terms of their agreement by increasing the penalty they must serve as a result of their conviction, in violation of the Ex Post Facto Clause.[3]

114.

The Statute is not rationally connected to a non-punitive purpose. The instability it creates is harmful to the public.

115.

The portion of Ga. Code Ann. § 42-1-12 that prohibits Plaintiffs from becoming homeless is applied retroactively to Plaintiffs who were long ago

---

[2]     Plaintiffs are not raising any state constitutional claims, including, but not limited to banishment.

[3]     The Court has dismissed Plaintiffs' procedural Due Process claim. Plaintiffs specifically preserve for appeal the issue of whether the Statute violates the terms of Plaintiffs' plea agreements and their rights under the Due Process Clause of the United States Constitution.

sentenced for their crimes, in violation of the Ex Post Facto Clause.

116.

Because the Statute applies retroactively to Plaintiffs and because it was passed with the legislative intent and practical effect to further punish Plaintiffs for past crimes, the Statute violates the Ex Post Facto Clause of the United States Constitution.

**COUNT TWO**

**VIOLATION OF DUE PROCESS CLAUSE: VAGUENESS**

117.

Plaintiffs incorporate herein and re-allege, as if fully set forth herein, the allegations of ¶¶ 1-69 and ¶¶ 76-109.

118.

Ga. Code Ann. § 42-1-15 is unconstitutionally vague in violation of Plaintiffs' right to due process under the Fourteenth Amendment. The lack of fair notice of what the Statute requires is particularly problematic given that those charged with violating it are subject to 10-30 years in prison.

119.

A legislative enactment is impermissibly vague if it either "fail[s] to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits" or "authorize[s] and even encourage[s] arbitrary and discriminatory enforcement." *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999).

43

A law must provide "fair notice" of proscribed conduct so that citizens can conform their conduct to the law. *Morales*, 527 U.S. at 58.

120.

The phrase "areas where minors congregate" in Ga. Code Ann. § 42-1-12(a)(3) is unconstitutionally vague. Ga. Code Ann. § 42-1-15(a) prohibits sex offenders from living, working or loitering within 1,000 feet of "areas where minors congregate." The Statute does not elaborate on what it means to "congregate" and which areas qualify under this section as a prohibited zone. "Areas where minors congregate" could refer, for example, to movie theaters, restaurants, malls, parking lots, or any of the other numerous places where minors are present. Furthermore, the Statute is unclear about the regularity or the length of resting time that would constitute a "congregation." This provision can and has resulted in arbitrary enforcement – with law enforcement officials in one county interpreting the phrase differently than officials in other counties.

121.

Ga. Code Ann. § 42-1-15(a) is unconstitutionally vague because it does not provide fair warning of prohibited conduct such that Plaintiffs could take steps to comply with the law. Ga. Code Ann. § 42-1-15(a) prohibits individuals on the registry from living within 1,000 feet of school bus stops, churches, and numerous other locations. The Statute, however, lacks a *mens rea* requirement. Consequently, the moment a church opens or a bus stop is moved near a

44

Plaintiff's home, the Plaintiff is in violation of the law, even if he is not aware of it.

The Statute does not require that any notice be provided to a sex offender who is

in violation of the Statute's requirements and does not provide any time period

within which that person can relocate to a new residence.  The moment the

prohibited location comes into being, the crime is complete, and the Plaintiff is

subject to 10-30 years imprisonment.  Ga. Code Ann. § 42-1-15 fails to provide fair

warning of prohibited conduct so that individuals can conform their conduct to

the law.

122.

The phrase "school bus stop as designated by local school boards" in Ga.

Code. Ann. § 42-1-12(a)(19) is unconstitutionally vague – so much so that nearly

every sheriff's department in the State apparently misinterpreted its meaning.

The phrase produced such mass confusion that Georgia sheriffs mistakenly

evicted hundreds of people and came within 48 hours of mistakenly forcing

thousands more from their homes.  It is still unclear what school boards must do

to "designate" bus stops.

123.

Aside from the matter of "designation," the school bus stop provision of

Code Ann. § 42-1-15(a) is vague in that it does not provide Plaintiffs with

reasonable notice of what conduct is prohibited.  There are thousands of school

bus stops in the counties that have designated them.  These bus stops are usually

45

unmarked and impossible to identify.  Plaintiffs do not have access to bus stop lists.  Unlike a school or daycare center, bus stops have no set "boundaries," making it impossible to measure 1,000 feet from each one.  Moreover, bus stops are a moving target.  School bus stops are inherently transient and may be designated by local school boards at any time, significantly limiting the permanency of residences that can be established by Plaintiffs and impairing their ability to form relationships in their chosen communities.

124.

The prohibition against loitering within 1,000 feet of a church, school, or any area where minors congregate is unconstitutionally vague.  See Ga. Code. Ann. 42-1-15(a).

125.

The prohibition against employment at a church is unconstitutionally vague.  The prohibition against volunteering at a church is unconstitutionally vague.  These prohibitions are being interpreted in many jurisdictions to bar Plaintiffs from singing in church choirs, working in soup kitchens, or volunteering for church activities.

126.

Ga. Code Ann. § 42-1-12(a)(1) is unconstitutionally vague.  This code section requires all Plaintiffs to register an "address," upon penalty of 10-30 years in prison.  The code section further specifies that "homeless" is not an "address."

46

In some counties, Plaintiffs are being arrested for being homeless under this subsection, while in other counties, homeless persons are permitted to give a temporary location. Ga. Code Ann. § 42-1-12(a) is being enforced in an arbitrary and irregular fashion and must be struck down as unconstitutionally vague.

**COUNT THREE**

**VIOLATION OF DUE PROCESS:**
**OVERBREADTH**

127.

Plaintiffs incorporate herein and re-allege, as if fully set forth herein, the allegations of ¶¶ 1-69 and ¶¶ 75-109.

128.

Ga. Code Ann. § 42-1-15(a) and Ga. Code Ann. § 42-1-12 violate the Due Process Clause of the Fourteenth Amendment because they are impermissibly overbroad. Under the overbreadth doctrine, a statute that prohibits a substantial amount of constitutionally protected conduct is invalid on its face. *See United States v. Williams*, 444 F.3d 1286, 1296 (11th Cir. 2006).

129.

The residence, employment, volunteering, and loitering restrictions in the Statute interfere with constitutionally protected conduct such as working, going to church and living with one's family.

47

130.

The Statute's residency restrictions are overbroad. While the Statute's residency restrictions may be justified if targeted to certain offenders, Georgia treats every offender like the worst offender. The Statute treats individuals such as Janet Allison, convicted for not preventing her 15-year old daughter from becoming sexually active, just as it treats someone who has repeatedly assaulted children. Under the Statute, even a hospice patient with six months to live – someone who poses no danger to anyone – is forced out of his nursing home if it is within 1,000 feet of a church or pool. The absence of even a procedure to apply for an exemption makes the law overbroad in its application.

131.

The Statute's employment restriction is overbroad. It applies to everyone on the registry – even to people like Wendy Whitaker who is on the registry for engaging in consensual teenage sex when she was a sophomore in high school. It also applies to bar any Plaintiff from employment at any business within 1,000 feet of a church, even if the church is only in operation one day per month on a day the Plaintiff does not work. The Statute's employment restriction significantly hinders Plaintiffs' ability to earn a living – especially in urban areas. Hundreds of Plaintiffs have lost their jobs and/or been unable to apply for jobs as a result of the Statute's employment restriction.

132.

The Statute's prohibition against volunteering at a church is overbroad and interferes with protected activities. The prohibition on volunteering at a church is so overbroad that it turns the act of singing in the church choir, working at a church soup kitchen, or baking a pie for a church function into a felony punishable by 10-30 years in prison.

133.

The Statute's prohibition against loitering within 1,000 feet of a church, school, or any area where minors congregate is overbroad. The loitering provision interferes with Plaintiffs' ability to conduct activities essential to daily living, such as grocery shopping, eating at restaurants, shopping at malls and other such activities. The prohibition against loitering within 1,000 feet of a church discourages Plaintiffs from attending church services–including weddings and funerals–and participating in other church-sponsored activities. The risk of going to prison for 10-30 years if they are thought to be "loitering" is too high a price to pay for church attendance.

134.

The Statute is overbroad because it, in conjunction with Ga. Code. Ann. § 42-1-12(a)(1) and § 42-1-12(n)(1-3), makes it illegal to be homeless. Plaintiffs who become homeless twice in their lives are subject to life imprisonment.

## COUNT FOUR

## VIOLATION OF SUBSTANTIVE DUE PROCESS

### 135.

Plaintiffs incorporate herein and re-allege, as if fully set forth herein, the allegations of ¶¶ 1-69 and ¶¶ 76-109.

### 136.

The Statute is unconstitutional because it impinges on Plaintiffs' fundamental right to family privacy – specifically the right to cohabit with or near one's family.  Plaintiff Joseph Linaweaver and others have been forced to separate from family members and/or leave the State because the Statute makes it impossible to settle anywhere in Georgia with any permanence.

### 137.

The Statute violates the right to due process because it, in conjunction with Ga. Code. Ann. § 42-1-12(a)(1) and § 42-1-12(n)(1-3) makes it illegal (and punishable by 10-30 years imprisonment) to be homeless.  Plaintiffs who become homeless twice in their lives are subject to life imprisonment.  See Ga. Code Ann. § 42-1-12(n)(1-3).  Imprisoning a Plaintiff for 10-30 years (or for life) because he is impoverished and homeless shocks the conscience.  All Plaintiffs, including named Plaintiffs are subject to this provision.

138.

The Statute violates the right to substantive due process because it summarily evicts elderly, ill, and/or severely disabled people from their homes, nursing homes, and hospice care facilities. Many such Plaintiffs are totally physically incapacitated and pose no threat. Many have no family and nowhere else to go. Their advanced age and physical and/or mental disabilities make it impossible for them to find alternative living arrangements. As a result, they will be put in jail, tried for violating Ga. Code Ann. § 42-1-15, and sent to prison. Forcing Alzheimer's patients and hospice patients out of their nursing homes because they live within 1,000 feet of a prohibited location serves no rational purpose and shocks the conscience.

139.

The Statute violates the right to substantive due process because it evicts teens who have consensual sex with other teens from their homes – in some cases a decade after the "crime" occurred. Wendy Whitaker poses no danger to anyone. There is no rational basis to evict her from her home and community eleven years after she engaged in consensual sex with a high school classmate. The same is true for Joseph Linaweaver and other Plaintiffs.

140.

By forcing Plaintiffs from their homes and jobs, the Statute violates

Plaintiffs' right to substantive due process of law under the Fourteenth

Amendment to the Constitution of the United States, U.S. Const. amend. XIV, § 1,

as applied to the states and enforced through 42 U.S.C. § 1983.

### COUNT FIVE

### VIOLATION OF FREE EXERCISE CLAUSE
### AND RIGHT TO FREEDOM OF ASSOCIATION

141.

Plaintiffs incorporate herein and re-allege, as if fully set forth herein, the

allegations of ¶¶ 1-69 and ¶¶ 76-109.

142.

The Statute prohibits all people on the registry from working at or

volunteering at a church.  This includes Lori Collins, who was unable to apply for

a job opening in the media ministry at Mt. Paran Church of God because she is on

the sex offender registry.  Ms. Collins is a committed Christian who seeks to

devote her life to Christian ministry.  Ms. Collins would like to seek employment

at this church or another church to minister to persons in need of spiritual

guidance, but she cannot do so because of the Statute.  Ms. Collins and others like

Plaintiff Omar Howard would like to continue their volunteer work at church,

but cannot do so under the Statute.  The Statute operates as a substantial burden

on the religious beliefs and practices of Ms. Collins, Mr. Howard, and others on the registry.

143.

The Statute creates an impermissible chilling effect on the right to attend a house of worship.  The penalty for loitering at or within 1,000 feet of a church is a minimum of 10 years and a maximum of 30 years in prison.  Many Plaintiffs, including Wendy Whitaker, have ceased attending church services and/or engaging in religious activities because of fear of prosecution under the Statute. The Statute violates the Free Exercise Clause, U.S. Const. amend. I, and the right to freedom of association, see U.S. Const. amend. I.

**COUNT SIX**

**VIOLATION OF TAKINGS CLAUSE**

144.

Plaintiffs incorporate herein and re-allege, as if fully set forth herein, the allegations of ¶¶ 1-69, ¶¶ 76-109.

145.

The Takings Clause prohibits the regulatory taking of a person's property without just and adequate compensation.  Homeowners like Wendy Whitaker have a significant property interest protected by the Takings Clause, as recognized by the Georgia Supreme Court in *Mann v. Dep't of Corrections*.

53

146.

Leaseholds and tenancies can also constitute property interests protected by the Takings Clause. Plaintiffs Janet Allison and Lori Collins rent their homes.

147.

Many Plaintiffs who entered into a valid lease to pay rent for a residence have been forced to leave their residence under the Statute. Additionally, under the Statute, such persons are subject to immediate eviction should a church, child care center, park (or other location) move in within 1,000 feet of the person's residence. As a result, Plaintiffs face the possibility of being repeatedly uprooted and forced to abandon homes to comply with the restrictions of Ga. Code Ann. § 42-1-15. There is no place in Georgia where a sex offender can rent property without being continually at risk of being ejected.

148.

The number of plaintiff-lessees with protected property interests is likely to be in the thousands. Yet the exact number – be it 100, 1,000, 2,000, or more – is not relevant to the Takings Clause inquiry. If the Statute is unconstitutional under the Takings Clause with regard to one renter who has expended funds on his residence, then it is unconstitutional with regard to all of them.

149.

The Statute impairs the use of rented property as a residence and effectively evicts renters from their homes. By requiring Plaintiffs to break their leases and/or abandon their interest in property, the Statute violates the Fifth Amendment's prohibition on takings without just compensation, U.S. Const. amend. V, as applied to the states and enforced through 42 U.S.C. § 1983.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that this Court:

1.   Assume jurisdiction over this action;

2.   Determine by Order pursuant to Rule 23 of the Federal Rules of Civil Procedure that this action be maintained as a class action with plaintiff and defendant classes;

3.   Enter a preliminary and thereafter a permanent injunction enjoining the portions of Ga. Code Ann. § 42-1-15 that violate the rights of Plaintiffs and the class they represent;

4.   Enter a preliminary and thereafter a permanent injunction enjoining the provisions of Ga. Code Ann. § 42-1-12 that make it illegal to be homeless;

5.   Declare that the Statute is vague and overbroad in violation of the Due Process Clause;

6.  Declare that the Statute violates: the Ex Post Facto Clause; the substantive component of the Due Process Clause and the right to family privacy; the Takings Clause; the Free Exercise Clause and the right to freedom of association.

7.  Enter judgment in favor of Plaintiffs;

8.  Award Plaintiffs the costs of this lawsuit and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988; and

9.  Order such other and further relief as this Court may deem just and proper.

Respectfully submitted this 14th day of October, 2008.

SOUTHERN CENTER
FOR HUMAN RIGHTS

**s/ Sarah Geraghty**

Stephen B. Bright
(Ga. Bar No. 082075)
Lisa Kung
(Ga. Bar No. 430302)
Sarah Geraghty
(Ga. Bar No. 291393)
Gerald R. Weber
(Georgia Bar No. 744878)
83 Poplar Street, N.W.
Atlanta, Georgia 30303-2122
Tel: (404) 688-1202
Fax: (404) 688-9440
sbright@schr.org
lkung@schr.org
sgeraghty@schr.org
gweber@schr.org

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served the foregoing *Fourth Amended Complaint* upon all Defendants by causing a true and correct copy thereof to be delivered by the Court's ECF filing system to Defendants' counsel of record at the following addresses:

Ms. Devon Orland
Mr. Joseph Drolet
Office of the Attorney General
40 Capitol Square
Atlanta, GA  30334

Mr. David E. Hudson
Hull, Towill, Norman, Barrett & Salley, PC
P.O. Box 1564
Augusta, GA  30903-1564

This 14th day of October, 2008.

s/Sarah Geraghty
Sarah Geraghty
(Ga. Bar No. 291393)
Southern Center for Human Rights
83 Poplar Street, N.W.
Atlanta, Georgia  30303-2122
Tel: (404) 688-1202
Fax: (404) 688-9440

*Attorney for the Plaintiffs*