IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

|  |  |  |
|---|---|---|
| WENDY WHITAKER, et. al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CIVIL ACTION |
| v. | ) | |
| | ) | No. 4:06-cv-140-CC |
| SONNY PERDUE, et. al., | ) | |
| | ) | |
| Defendants. | ) | |

## RESPONSE TO DEFENDANTS' MOTION TO DISMISS CLAIMS FOR ALLEGED TAKING OF PROPERTY

Defendants' Motion to Dismiss Plaintiffs' Claims for Alleged Taking of Property should be denied because: (1) named Plaintiffs Collins and Allison rent their residences pursuant to a valid lease and have standing to allege a violation of the Takings Clause; and (2) O.C.G.A. § 42-1-15 unlawfully deprives them and other plaintiff-renters of their leased property interests in violation of the Takings Clause of the United States Constitution.

## STATEMENT OF FACTS

When HB 1059 went into effect on July 1, 2006, many plaintiff-renters were forced to break their leases and abandon their property because they lived within

1,000 feet of churches, swimming pools and school bus stops.[1]  They had to pay rent for property on which they could not live, forfeit security deposits, and incur other costs for early termination of leases.[2]  In 2008, following the Supreme Court's decision in <u>Mann v. Dep't of Corr.</u>, 282 Ga. 754 (2007), the General Assembly passed SB 1 to protect the property rights of certain homeowners. Although the State Defendants now concede that renters who pay rent pursuant to a valid lease have a property interest protected by the Takings Clause, no such statutory exemption was included to protect renters.  Even when Plaintiffs are in compliance with the law when they enter a lease, they are subject to eviction the moment a prohibited location moves within 1,000 feet of the residence.[3]

## STANDARD OF REVIEW

In reviewing a motion to dismiss, the trial court must accept the allegations in the Complaint as true and construe them "in the light most favorable to the plaintiff."  Fed. R. Civ. P. 12(b); <u>Hill v. White</u>, 321 F.3d 1334, 1335

---

[1]      See <u>infra</u>, p. 9.

[2]      See <u>id</u>.

[3]      Pursuant to this Court's November 13 order, Plaintiffs will provide the Court with a proposed definition of a subclass for renters who are subject to Takings Clause violations.  As stated in the hearing last week, the renter subclass includes persons who have been and are subject to eviction in violation of the Takings Clause.

(11th Cir. 2003).  "A motion to dismiss is granted only when the movant demonstrates 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  Spain v. Brown & Williamson Tobacco Corp., 363 F.3d 1183, 1187 (11th Cir. 2004) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

## LEGAL ARGUMENT

I.   O.C.G.A. § 42-1-15 EXEMPTS CERTAIN HOMEOWNERS FROM EVICTION, BUT PROVIDES NO PROTECTION OR EXEMPTION FOR RENTERS, IN VIOLATION OF THE TAKINGS CLAUSE.

Defendants acknowledge that renters who have a property interest in their leaseholds are protected by the Takings Clause.  Defendants specifically state:

> [t]o the extent that the Plaintiffs have a valid property interest under Georgia law, that property interest cannot be taken if, as Plaintiffs suggest, there is a subsequent introduction of a condition that would be prohibited under the Statute.[4]

Plaintiffs agree that the Takings Clause prohibits the state from taking renters' property if there is a subsequent introduction of a prohibited location within 1,000 feet of the rented residence.  O.C.G.A. § 42-1-15, however, does not make any such exception for renters.  On the contrary, the Statute explicitly

---

[4]   See Defs.' Mot. to Dismiss [Doc. No. 199-2] at 7.

3

requires renters with a valid property interest to vacate their rented homes if a third party moves a prohibited location within 1,000 feet of the residence.

Defendants claim that Plaintiffs fail to "allege that the Statue will be interpreted in such a manner so as to prohibit them from keeping their lease."[5] But there is simply no other way to interpret the Statute. It contains no "move-to-the-offender" exception to its provisions when it comes to renters. The 2008 revisions only protect certain homeowners, not renters. By the terms of the Statute, renters with a valid property interest <u>must</u> forego that interest if a property moves within 1,000 feet of the rented location.

The constitutional violation, moreover, is not cured by the fact that Defendants Perdue and Baker have agreed in legal briefs to "read in" an exception for renters where it does not exist in the statutory language. Defendants Perdue and Baker have repeatedly asserted they have no authority to enforce the Statute.[6] They certainly cannot write in a new exception. And law

---

[5]     <u>See</u> Defs.' Mot. to Dismiss at 8.

[6]     <u>See</u> Defs.' Br. in Supp. of Mot. to Decertify the Class [Doc. No. 181-2] June 9, 2008, p. 25 ("Neither the Governor nor the Attorney General have the authority to arrest or charge persons who fail to comply with the residency provision . . . ."); Defs.' Reply Br. in Supp. of Mot. to Decertify the Class, July 11, 2008, p. 4 (Denying that the Governor and Attorney General have "enforcement authority," and stating that neither defendant has "the ability to control

enforcement officials have, in fact, interpreted the Statute to force renters with valid property interests to abandon those interests.[7]  The United States Supreme Court has repeatedly held that voluntary cessation does not moot a constitutional claim.[8]  That is especially true here, where only some of the Defendants – the Attorney General and Governor – have agreed to stop the challenged conduct in legal briefs.

II.     NAMED PLAINTIFFS JANET ALLISON AND LORI COLLINS HAVE STANDING TO RAISE A TAKINGS CLAIM.

A plaintiff has standing when three criteria are met: (1) the plaintiff has experienced an injury in fact; (2) the injury is fairly traceable to the challenged statute; and (3) the plaintiff's harm is likely to be redressed should the court

---

independently elected sheriffs. . . .").

[7]     See infra, p. 9.

[8]     "[E]ven when a plaintiff seeks only equitable relief, a defendant's voluntary cessation of a challenged practice does not render a case moot 'unless it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" Buckhannon Bd. and Care Home, Inc. v. West Virginia Dep't of Health and Human Serv., 532 U.S. 598, 638 (2001) (Ginsburg, dissenting on other grounds) (citing Friends of the Earth, Inc. v. Laidlaw Environmental Serv. (TOC), Inc., 528 U.S. 167, 189-192 (2000)); City News and Novelty, Inc. v. City of Waukesha, 531 U.S. 278, 284 n. 1 (2001) ("Voluntary cessation of a challenged practice rarely moots a federal case."); Sierra Club v. EPA, 315 F.3d 1295, 1303 (11th Cir. 2002)( "Where a defendant voluntarily ceases challenged conduct, the case is not moot because nothing would prevent the defendant from resuming its challenged action.").

order relief.  See Doe v. Kearney, 329 F.3d 1286, 1292 (11th Cir. 2003).  "[W]hen standing is challenged on the basis of pleadings, we accept as true all material allegations in the Complaint, and construe the Complaint in favor of the complaining party."  Pennell v. City of San Jose, 485 U.S. 1, 7 (1988).

While only one named plaintiff must have standing to challenge a statute, Murray v. Auslander, 244 F.3d 807, 810 (11th Cir. 2001), in this case, there are two.  Lori Collins and Janet Allison rent their residences pursuant to valid, written leases. Ms. Collins is a party to a five-year lease that prevents her from subleasing.[9]  The lease further prevents her from "carrying on any business, profession, or trade of any kind" or from using the property for "any purpose other than as a private single family residence."[10]  Should Ms. Collins be forced to abandon the lease during its term, the lease provides that she may be held liable for any difference between the rent that would have been payable under the lease during the balance of the unexpired term (approximately $8,400, if calculated from December 2008).  Janet Allison is a party to a month-to-month

---

[9]     See Fourth Am. Compl. ¶¶ 67, 145-49; Decl. of Lori Collins [Doc. 187]; Collins Lease (Exhibit 1).

[10]    See Collins Lease, Ex. 1.

lease that prevents her from subleasing.[11]  By operation of law, she must provide thirty days notice to terminate the lease.[12]

Collins and Allison meet the "injury" requirement of the standing test because they will be evicted the moment a school bus stop, church, child care center, or other prohibited location moves within 1,000 feet of their residence. They experience a specific threat of having their leased property "taken" from them every single day.

Defendants argue that Plaintiffs lack standing to raise takings claims unless they wait until the moment they are ordered from their homes.  But courts have made it clear that plaintiffs do not need to wait until they suffer an injury to sue.  See Pennell v. City of San Jose, 485 U.S. 1, 7-8 (1988) (landlord had standing to challenge city rent control ordinance under the Takings Clause even though the clause had not yet been enforced, where it was not speculation to conclude that the ordinance would be enforced against plaintiff); 31 Foster Children v. Bush, 329 F.3d 1255, 1265 (11th Cir. 2003) (plaintiffs need not wait for an injury to occur before filing suit).

---

[11]    See Fourth Am. Compl. ¶¶ 35, 145-49; Decl. of Janet Allison (Exhibit 2).

[12]    See O.C.G.A. §§ 44-7-6, 44-7-7.

7

In <u>Cutshall v. Sundquist</u>, 193 F.3d 466, 472 (6th Cir. 1999), for example, a plaintiff challenged a statute permitting law enforcement to place his name on the state's sex offender registry.  The defendant argued that plaintiff lacked standing since his name had not yet been placed on the registry.  The Sixth Circuit Court of Appeals held the plaintiff demonstrated an "injury" since the registration requirement could be imposed upon him any time by a third party:

> The statute is written in such a manner that the release of registry information can take place at any time law enforcement officials have determined that release is necessary to protect the public. . . . Were it otherwise, a convicted sex offender would be required to wait until after his registry information is released before challenging the Act.  Cutshall's status as a convicted sex offender registered in accordance with the Act arguably results in an injury because <u>he faces a specific threat of being subject to the release of registry information every day</u>.  Id. at 472.

The threat that Plaintiffs' property will be taken is not "imaginary."[13]  Both Collins and Allison have been expelled from their homes due to O.C.G.A. § 42-1-15; Allison had to move once, while Collins moved twice.[14]

---

[13]   <u>See</u> Defs.' Mot. at 8.

[14]   <u>See</u> Fourth Am. Compl. ¶ 34 (alleging that Allison was forced from her home after the passage of HB 1059 because of the home's proximity to a church); Fourth Am. Compl. ¶¶ 62, 66 (alleging that Ms. Collins was forced from her home in 2006 because of its proximity to a bus stop, then forced from a second home due to the church provision).

Other class members, moreover, have already experienced a "taking" of their leased property in violation of the Takings Clause.  For example:

- Tyrone Mitchell leased a rented dwelling in Gwinnett County before the passage of HB 1059.  When Mr. Mitchell moved into the residence, he was in compliance with the law.  In July 2006, HB 1059 went into effect, making it illegal for him to live within 1,000 feet of a swimming pool.   In September 2006, Mr. Mitchell was given three days to move because his residence was within 1,000 feet of a pool.  Mr. Mitchell had to continue to pay rent on his leased home, even though he could not live there.[15]

- Kelly Piercy rented an apartment in Muscogee County pursuant to a valid lease.  When Mr. Piercy moved into the residence, he was in compliance with the law.  In July 2006, HB 1059 went into effect, making it illegal for him to live within 1,000 feet of a church.  In June 2006, Mr. Piercy was ordered to vacate the residence because it was within 1,000 feet of a church.   He had to pay rent on his property for months after he was evicted and lost his security deposit.[16]

- George Thomas Hudson leased a property in Cobb County.   When Mr. Hudson moved into the residence, he was in compliance with the law.  Mr. Hudson was forced to break his lease in June 2006 (in anticipation of the July 1, 2006 effective date of HB 1059) because his apartment was within 1,000 feet of a pool.[17]

The fact that similarly situated persons have been forced to break leases is an appropriate factor to consider in determining whether the threatened injury to

---

[15]    See Decl. of Tyrone Mitchell [Doc. No. 169, Ex. B].

[16]    See Decl. of Kelly Piercy [Doc. No. 169, Ex. C].

[17]    See Decl. of George Hudson [Doc. No. 169, Ex. C].

the named plaintiffs is real and immediate. <u>See</u> <u>Bourgeois v. Peters</u>, 387 F.3d 1303, 1309 (11th Cir. 2004) ("Past wrongs do constitute evidence bearing on whether there is a real and immediate threat of repeated injury which could be averted by the issuing of an injunction."); <u>31 Foster Children v. Bush</u>, 329 F.3d 1255, 1265 (11th Cir. 2003) ("alleged pattern and practice presents a substantial likelihood that the alleged injury will occur").

The Supreme Court, moreover, has recognized an exception to the basic standing requirement in cases where a plaintiff's claims are capable of repetition yet evading review. <u>See</u> <u>Doe v. Kearney</u>, 329 F.3d 1286, 1293 (11th Cir. 2003). The "capable of repetition" exception applies here since the challenged action is too short in duration to be fully litigated prior to its completion. <u>See</u> <u>Bourgeois v. Peters</u>, 387 F.3d 1303, 1308 (11th Cir. 2004). Under the Statute, the moment a prohibited location moves within 1,000 feet of the residence in question, the lessee must vacate. She must either forego her property interest or face arrest. The taking will thus be completed by the time a legal challenge has been mounted. Any constitutional injury will likely be too fleeting to be redressed and hence qualifies as being capable of repetition yet evading review.

The "capable of repetition" exception also applies here because there is a reasonable expectation that Allison and Collins will have to move again under the Statute. Bourgeois, 387 F.3d at 1308. The possibility that a school bus stop, church, pool, or other prohibited location will locate itself within 1,000 feet of plaintiffs' residence is not far-fetched or unlikely. Many plaintiffs, including Anthony Mann, have been ordered to leave their residences when a prohibited location "moved to the offender."[18]

Plaintiffs Collins and Allison easily satisfy the two remaining standing tests. The injury they allege is undoubtedly a direct result of the Statute. Doe, 329 F.3d at 1292. Finally, this Court can redress the Takings Clause violation by granting the injunctive relief Plaintiffs seek. See id.[19]

---

[18]    See e.g. Mann, 282 Ga. at 759; Decl. of Andrew Norton (stating that he was forced to move when a church was constructed near his residence) [Doc. No. 186, Ex. 5 ¶ 18].

[19]    In the alternative, should the Court find that Allison and Collins lack standing under the Takings Clause, Plaintiffs respectfully ask the Court to permit them to add a class representative who has already been forced to break a lease due to the Statute. See Lynch v. Baxley, 651 F.2d 387, 388 (5th Cir. Unit B 1981)(district court erred in dismissing class action challenging the constitutionality of a state statute where it failed to give members of the class with live claims an opportunity to become plaintiffs by amendment of the complaint or by intervention). Such persons have clearly suffered an injury connected to the Statute and have standing to challenge future forced evictions under the "capable of repetition yet evading review" doctrine.

III.    O.C.G.A. § 42-1-15 UNLAWFULLY TAKES RENTERS' PROPERTY IN VIOLATION OF THE TAKINGS CLAUSE.

As the United States Supreme Court recognized in <u>Lingle v. Chevron</u>, 544 U.S. 528, 537 (2005), "government regulation of property may, in some instances, be so onerous that its effect is tantamount to a direct appropriation or ouster – and that such 'regulatory taking' may be compensable under the Fifth Amendment."  Regulations that fall short of eliminating plaintiffs' economic use may still effect a taking, depending upon: (1) the regulation's economic impact on the person in possession of the property interest; (2) the extent to which the regulation interferes with investment-backed expectations; and (3) the interest promoted by government action.  See <u>Palazzolo v. Rhode Island</u>, 533 U.S. 606, 617 (2001).

A.    **Leaseholders Who Pay Rent Pursuant to a Valid Lease Have Property Interests Under the Takings Clause.**

Property rights are created by the State.  See <u>Phillips v. Washington Legal Found.</u>, 524 U.S. 156 (1998).  Georgia law has long recognized that renters have takings claims where government action requires their vacating a leasehold. Pursuant to Art. I, § III, ¶ 1(a) of the Georgia Constitution: "private property shall not be taken or damaged for public purposes without just and adequate

compensation first being paid."   The term "property" in the Takings Clause is

interpreted broadly:

> In <u>Woodside v. City of Atlanta</u>, 214 Ga. 75, 83, 103 S.E.2d 108 [(1958)], it is made clear that the taking or damaging with which the constitutional provision is concerned may be of any species of property. In the *Woodside* case the principle is pronounced: "The term 'property' is a very comprehensive one, and is used not only to signify things real and personal owned, but to designate the right of ownership and that which is subject to be owned and enjoyed." <u>Ellis v. Dep't of Transp.</u>, 175 Ga. App. 123, 124, 333 S.E.2d 6, 7 (1985).

Georgia has specifically and repeatedly held that renters have property

interests protected by the Takings Clause.  See <u>Waters v. DeKalb County</u>, 208 Ga.

741, 745, 69 S.E.2d 274, 277 (1952) ("the holder of a valid rent contract for realty . .

. has a property right in the leased premises, which is protected by our

constitutional provision declaring that private property cannot be taken or

damaged, for a public use, without first paying just and adequate compensation

for the same"); <u>Ellis</u>, 175 Ga. App. at 124; 333 S.E.2d at 7 (lessee protected by state

constitution's takings clause).  See also <u>Ammons v. Central of Ga. Ry. Co.</u>, 215

Ga. 758, 113 S.E.2d 438 (1960) (lessee entitled to enjoin taking without just

compensation); <u>Dep't of Transp. v. Morris</u>, 186 Ga. App. 673, 368 S.E.2d 155

(1988) (renter was entitled to notice of condemnation under Georgia's

condemnation statute); <u>State Highway Dep't v. Bell</u>, 113 Ga. App. 768, 149 S.E.2d

752 (1966) (lessee entitled to damages in condemnation case).

The United States Supreme Court likewise holds that the federal Takings Clause protects both renters and homeowners.  Since at least 1946, the United States Supreme Court squarely held that tenants have a claim for the "taking of their leaseholds," or "the shortening of the term" of a lease.  <u>United States v. Petty Motor Co.</u>, 327 U.S. 372, 374-75 (1946) (even oral month-to-month tenant has takings claim); <u>see also</u> <u>Greene v. Lindsay</u>, 456 U.S. 444, 450-51 (1982) ("In this case, [tenants] have been deprived of a significant interest in property: indeed, of the right to continued residence in their homes."); <u>Chapman v. United States</u>, 365 U.S. 610 (1961) (landlord cannot consent to search of tenant's home). As the Seventh Circuit noted:

> [L]easehold interests are property interests protected by the Fifth Amendment. Furthermore, ... the fact that the city did not acquire the tenants' leaseholds, but rather exercised a police power to regulate the tenants' enjoyment of their leaseholds, is not dispositive. It is well established that a Fifth Amendment "taking" can occur through the exercise of the police power to regulate property rights. <u>Devines v. Maier</u>, 665 F.2d 138, 141 (7th Cir. 1981), <u>clarified</u>, 728 F.2d 876, 880 (7th Cir. 1984) ("In <u>Devines I</u>, this court properly determined that leasehold interests are property interests protected by the Fifth Amendment.").

14

**B.    O.C.G.A. § 42-1-15 Has a Substantial Economic Impact on Plaintiffs Who Lease Their Residences.**

O.C.G.A. § 42-1-15 has a substantial economic impact on Plaintiffs.   The locations where plaintiffs can reside are "severely restricted."   Mann v. Dep't of Corr., 282 Ga. 754, 757 (2007).   Plaintiffs may also be subject to private limits and municipal restrictions.   Id.   A great deal of time and money is often invested in finding a livable location.   Despite these restrictions, Collins, Allison, and other plaintiffs managed to find and rent residences that meet the requirements of O.C.G.A. § 42-1-15.   They rented their residences for the sole purpose of serving as their home.

The moment a prohibited location moves within 1,000 feet, however, O.C.G.A. § 42-1-15 "utterly impairs" plaintiffs' interest in their leased residences. 282 Ga. at 758.   Plaintiffs must immediately vacate the residences and bear all of the substantial costs associated with early termination of a lease.   Such costs may include: forfeiting security deposits, paying months of rent on residences at which they cannot reside, incurring costs for an expedited move, and paying for repairs they could not make before eviction.

According to Defendants, Plaintiffs forced to vacate rented residences have not suffered an adverse economic impact because the Statute does not prevent them from "keeping the property and visiting the property or conducting other lawful activities on the property."[20]  Where, as here, the tenant must physically vacate the premises, however, the United States Supreme Court and Mann recognize that "[t]here [i]s a complete taking of the entire interest of the tenants in the property."  United States v. Petty Motor Co., 327 U.S. 372, 378 (1946); Mann, 282 Ga. at 758 ("immediate physical removal from … residence" is "functionally equivalent to the classic taking in which the government directly … ousts the owner") (citation omitted).

Moreover, in Mann, the Supreme Court explicitly rejected the argument that appellant could avoid an adverse economic effect by using the property for another, non-residential purpose.  Id. at 758-59 (finding the appellant acquired the home for the sole purpose of serving as his residence and holding that the Statute "force[s] appellant and his wife to become lessors, an unwelcomed and unanticipated role for which they are ill-equipped.")  The Court further recognized the "financial burden" of having to maintain and pay for two

---

[20]    See Defs.' Mot. at 11-12.

residences following a physical ouster caused by the Statute.  Id.   Finally, the Court recognized a host of other economic consequences of the Statute.  Mann, 282 Ga. at 759, n. 6 ("O.C.G.A. § 42-1-15 affects not only the location of appellant's residence but also such essential economic decisions as whether to rent or purchase, the duration of any lease to be signed, . . . whether to invest funds in improving the property, etc.").

### C.   O.C.G.A. § 42-1-15 Interferes with Reasonable Investment-Backed Expectations.

The Supreme Court of Georgia held that O.C.G.A. § 42-1-15 "does not merely interfere with, it positively precludes appellant from having any reasonable investment backed expectation in any property purchased as his private residence."  Mann, 282 Ga. at 759.  The same is true for lessees who rent residences.  Allison, Collins, and others leased their residences for the sole purpose of securing a home in which to live.  At the time of entry into their leases, they were in compliance with the law.  See Palazzolo v. Rhode Island, 533 U.S. 606, 617 (2001) (J. O'Connor, concurring) (reasonable expectations are shaped by the state of affairs at the time the possessor of property acquires the property interest).  The Statute eviscerates plaintiffs' reasonable expectation that they will be able to live in their homes for the duration of their leases.

17

**D.    The Governmental Interest Advanced in Support of the Statute Does Not Preclude Plaintiffs From Establishing a Takings Claim.**

While the government interest advanced in support of the Statute is strong, the focus of the takings analysis is on whether the government act takes property, not on whether the government has a good or bad reason for its action. Lingle v. Chevron, 544 U.S. 528, 543 (2005); Mann 282 Ga. at 759. The Takings Clause is intended to prevent a small group of citizens from bearing a burden which, in fairness and justice, should be borne by the public as a whole. There is no question that plaintiffs bear the Statute's entire financial burden. The court cannot overlook the significant adverse economic effect of O.C.G.A. § 42-1-15, the physical ouster it requires, and the Statute's elimination of any investment-backed expectation in plaintiffs' property. Mann, 282 Ga. at 759-60.

## CONCLUSION

For all the above reasons, Plaintiffs request that this Court deny Defendants' Motion to Dismiss Plaintiffs' Claims for Alleged Taking of Property. Plaintiffs ask the Court to find that where the renter's property interest predated the introduction of the prohibitive restriction, the residence restrictions are unconstitutional to the extent that they permit the regulatory taking of plaintiffs' property.

18

Respectfully submitted this 17th day of November, 2008.

SOUTHERN CENTER
FOR HUMAN RIGHTS

**s/ Sarah Geraghty**

Stephen B. Bright
(Ga. Bar No. 082075)
Lisa Kung
(Ga. Bar No. 430302)
Sarah Geraghty
(Ga. Bar No. 291393)
Gerald R. Weber
(Georgia Bar No. 744878)
83 Poplar Street, N.W.
Atlanta, Georgia  30303-2122
Tel: (404) 688-1202
Fax: (404) 688-9440
sbright@schr.org
lkung@schr.org
sgeraghty@schr.org
gweber@schr.org

## CERTIFICATION OF COMPLIANCE WITH L.R. 5.1B

Pursuant to L.R. 7.1, I, Sarah Geraghty, hereby certify that this response

brief has been prepared in compliance with Local Rule 5.1B.

Dated this 17th day of November, 2008.


**s/ Sarah Geraghty**

Sarah Geraghty
(Ga. Bar No. 291393)
Southern Center for Human Rights
83 Poplar Street, N.W.
Atlanta, Georgia  30303-2122
Tel: (404) 688-1202
Fax: (404) 688-9440
sgeraghty@schr.org

20

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served the foregoing *Response to Defendants' Motion to Dismiss Takings Claims* upon Defendants by causing a true and correct copy thereof to be delivered by the Court's ECF filing system to Defendants' counsel of record at the following addresses:

Mr. Joseph Drolet
Ms. Devon Orland
Office of the Attorney General
40 Capitol Square
Atlanta, GA  30334

Mr. David E. Hudson
Hull, Towill, Norman, Barrett & Salley, PC
P.O. Box 1564
Augusta, GA  30903-1564

This 17th day of November, 2008.

s/Sarah Geraghty
Sarah Geraghty
(Ga. Bar No. 291393)
Southern Center for Human Rights
83 Poplar Street, N.W.
Atlanta, Georgia  30303-2122
Tel: (404) 688-1202
Fax: (404) 688-9440

*Attorney for the Plaintiffs*