IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

_____

WENDY WHITAKER, et al.,          )
                                 )
        Plaintiffs,              )
                                 )        CIVIL ACTION
                                 )
v.                               )
                                 )        No. 4:06-140-CC
                                 )
SONNY PERDUE, et al.             )
                                 )
        Defendants.              )
_____ )

## PLAINTIFFS' BRIEF IN SUPPORT OF SUMMARY JUDGMENT ON VAGUENESS AND OVERBREADTH

This Court certified a class: "for the purposes of asserting vagueness and overbreadth challenges to the statute [of] all persons who are registered, are required to register, or in the future will be required to register as sex offenders pursuant to O.C.G.A. § 42-1-12."[1]  O.C.GA. § 42-1-15 is unconstitutionally vague and overbroad in violation of Plaintiffs' rights to due process under the Fourteenth Amendment.  The lack of fair notice of what the Statute requires is particularly concerning given that a 10 to 30 year prison sentence faces any person charged under it.  See § 42-1-15(h)(2).  Plaintiffs will identify and discuss

_____

[1]      Order, Mar. 30, 2009 at 16-17.

the particular provisions they believe are unconstitutionally vague, and then address the overbreadth of the statute as a whole.

I.     O.C.G.A. §§ 42-1-15 AND 42-1-12 HAVE UNCONSTITUTIONALLY VAGUE PROVISIONS.

A basic tenant of due process is that "[all persons] are entitled to be informed as to what the State commands or forbids."  *Lanzetta v. New Jersey*, 306 U.S. 451, 453 (1939); *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).  A statute is impermissibly vague if it "fail[s] to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits" or "authorize[s] and even encourage[s] arbitrary and discriminatory enforcement."  *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999).  A law must provide "fair notice" of proscribed conduct so citizens can conform their conduct to the law.  *Id.* at 58.  Vagueness standards are particularly stringent when a criminal statute is reviewed.  *See Nat'l Endowment for the Arts v. Finely*, 524 U.S. 569, 588 (1998) ("The terms of the provision are undeniably opaque, and if they appeared in a criminal statute . . . they could raise substantial vagueness concerns.").

A.     The Undefined "Designated" School Bus Stop Provision of §§ 42-1-15, 42-1-12 is Unconstitutionally Vague.

A statute must provide sufficient notice and clarity to enable "ordinary people" to understand "what conduct it prohibits."  *Grayned*, 408 U.S. at 108.  The

school bus stop provision failed this test spectacularly.  *The phrase "school bus stop as designated by local school boards" in § 42-1-12(a)(19) is so ambiguous and unclear that nearly every sheriff's department in Georgia apparently misinterpreted its meaning in 2006.*[2]  The phrase produced such mass confusion that Georgia sheriffs mistakenly ordered hundreds of people to leave their homes, actually evicted numerous people, and came within 48 hours of mistakenly evicting thousands more.[3]  Those Sheriffs understood the term "designated" to mean any location where a school district's buses regularly pick up students.[4]  This position was

---

[2]     All ten law enforcement officers who testified at the July 2006 preliminary injunction hearing – including Ted Paxton (Forsyth County), Investigator Russell Finely (Cobb County), Captain David Davis (Bibb County), Corporal Stephen Liflan (DeKalb County), Corporal Karen Pirkle (Gwinnett County), Sergeant Jay Baker (Cherokee County), Investigator Charlene Giles (Houston County), Lt. Ezell Brown (Newton County), Investigator Gene Higdon (Rockdale County), and Deputy Glenn Hoover (Fulton County) – believed that "school bus stops" referred to places where school buses stopped to pick up children, and all were enforcing the Statute accordingly.  *See* Tr. of Prelim. Inj. Hearing, July 11-12 [Doc. No. 42, 43] at 23, 37-38, 49-50, 62, 85, 87, 88, 159-60.

[3]     Sheriff Paxton of Forsyth County testified that his office notified all sex offenders in his county about the school bus stop provision and planned to give registrants 72 hours to vacate their homes or face arrest.  <u>See</u> Tr. of Prelim. Inj. Hearing, July 11-12 at 27-28.  As of July 11, 2006, the Cobb County Sheriff's Office had already directed most of its 200 sex offenders to vacate by July 1.  *See id.* at 37-40.  Corporal Stephen Lifland testified that the DeKalb County Sheriff's Office had imminent plans to "start arresting" people who remained at a residence within 1,000 feet of a school bus stop.  *See id.* at 65-66.

[4]     *See id.; Pls' Br. in Resp. to Court's July 12 Ruling Regarding the Definitions of*

identical to that of the Bill's sponsor.[5]   Some school districts interpreted the

phrase differently, to exclude stops at individual student's homes.[6]  *See Konikov v.*

*Orange Cty.*, 410 F.3d 1317, 1330-31 (11th Cir. 2005) (differences in interpretation

by enforcing agents supports vagueness).   The State defendants have insisted

that their interpretation of the provision is definitive, but government officials

cannot cure vagueness by "settl[ing] upon a definition" of an otherwise vague

term.  *Ga. Pacific Corp. v. Occupational Safety and Health Rev. Comm'n*, 25 F.3d 999,

1005 (11th Cir. 1994).

Aside from the matter of "designation," the school bus stop provision is

vague in that it does not provide Plaintiffs with reasonable notice of what

conduct is prohibited.  There are thousands of school bus stops in counties that

have designated them.[7]  School bus stops are not always marked.  Many are

---

"*School Bus Stops*" [Doc. No 40] at 19.

[5]      Robin McDonald, *Court Weighs if Laws Will Banish Sex Offenders; State Attorneys at Odds with Legislature, Sheriffs Over Bus Stops*, FULTON COUNTY DAILY REPORT, July 14, 2006 (quoting Rep. Keen as stating "[d]esignated means the appointed areas that a school bus driver is given that they are to go and pick children up.").

[6]      See Testimony of Robin Blackburn, Seminole County, Tr. of Hearing, July 11, 2006 [Doc. No. 42] at 94-99.

[7]      *See* Doc. No. 261, *Statement of Facts* ¶ 14-18.

impossible to identify and Plaintiffs do not have access to bus stop lists.  Unlike a school or child care center, bus stops have no set "boundaries," making it impossible to measure 1,000 feet from each one.  Moreover, bus stops are a moving target; they are inherently transient and may be designated by school boards at any time, significantly limiting the permanency of plaintiffs' residences.  The school bus stop provision is unconstitutionally vague.

**B.   Crime for Living or Working in "areas where minors congregate" is Unconstitutionally Vague.**

Most other states' sex offender laws list specifically the prohibited locations such as schools, or parks, *without* including an undefined catch-all.  *See generally Doe v. Miller*, 405 F.3d 700, 715 n. 4 (8th Cir. 2005).  Georgia, however, has such a free-wielding catch-all.  The phrase "areas where minors congregate," in § 42-1-12(a)(3) is unconstitutionally vague.  The definition section provides: "Area where minors congregate" *shall include* all public and private parks and recreation facilities, playgrounds, skating rinks, neighborhood centers, gymnasiums, school bus stops, public libraries, and public and community swimming pools." (emphasis added).  The definition section works in tandem with the criminal sanction in O.C.G.A. § 42-1-15 which prohibits sex offenders from living or working within 1,000 feet of an "area where minors congregate."

While other specific prohibited areas are articulated in Georgia's law, the catch-all "area where minors congregate" does not elaborate on what it means to "congregate" or define which areas qualify as prohibited zones. The Statute does not define how many minors are required to gather for the congregating requirement to be met, or how long the minors must be in the same place. "Areas where minors congregate" could refer, for example, to movie theaters, restaurants, malls, parking lots, or any other place where minors may be present. Furthermore, the Statute is unclear about the regularity or the length of resting time that would constitute a "congregation."[8]  The language "area where minors congregate" should be struck as unconstitutionally vague, to the extent it covers unspecified areas.

---

[8]  There are cases, in the context of *supervised release*, where similar language has been upheld against vagueness challenges. *United States v. Taylor*, 338 F.3d 1280 (11th Cir. 2003); *United States v. Zinn*, 321 F.3d 1084 (11th Cir. 2003). However, this and other circuits have held that "supervised release provisions are read to exclude inadvertent violations."  *See United States v. Johnson*, 446 F.3d 272, 280-282 (2nd Cir. 2006) ("Absent an inadvertent encounter with a minor that is precipitated by some lack of care to avoid it, the modified conditions assure that no violation occurs where incidental contact is followed by immediate removal."); *United States v. Paul*, 274 F.3d 155, 166-67 (5th Cir. 2001).  There is no comparable protection against inadvertent violation here.  The Georgia statute is criminal in nature, and there is no exception for accidental or inadvertent presence in an area where minors congregate.

**C.**    **Instant Criminal Liability for the Residence and Employment Restrictions Allows Criminal Sanction Without Fair Warning of Illegality.**

O.C.G.A. § 42-1-15 is unconstitutionally vague because it does not provide fair warning of prohibited conduct such that Plaintiffs could take steps to comply with the law.  O.C.G.A. § 42-1-15 prohibits plaintiffs from living within 1,000 feet of numerous other locations.  While § 42-1-15(h)(2) provides that presence at a prohibited location must be "knowing," there is no opportunity to move from one's unlawfully located home or job to avoid criminal sanction.  Once the person becomes aware ("knowing") that his home or work is in a prohibited location, he immediately commits the criminal act and "*shall* be punished by imprisonment for not less than ten nor more than 30 years."  *Id.*  (emphasis added).  O.C.G.A. § 42-1-15 premises criminal liability on mere geographic positioning – creating criminal liability as soon as a plaintiff knows of the prohibited location.  The lack of notice and time for opportunity to comply is particularly problematic for plaintiffs who find themselves living in proximity to a school bus stop; unlike a school, bus stops do not need to be constructed, but can spring into existence in an instant.

Criminal laws in Georgia generally provide an intent element <u>and</u> an act

requirement;[9] here, there is no act, only presence.   The moment a plaintiff becomes aware of a school bus stop, the crime is complete.  The "act" in question is by a third party who designates a bus stop or erects a church.  And, as the Georgia Supreme Court noted in *Mann v. Georgia Department of Corrections*:

> O.C.G.A. 42-1-15 looms over every location appellant chooses to call home, with its on-going potential to force appellant from each new residence whenever, within that statutory 1,000-foot buffer zone, some third party chooses to establish any of the long list of places and facilities encompassed within the residency restriction. While this time it was a day care center, next time it could be a playground, a school bus stop, a skating rink or a church. 282 Ga. 754, 759 (2007).

The Statute lacks a warning requirement or a time period to move one's home/work, an essential element which would form the basis for a criminal act. *Davis v. City of Peachtree City*, 251 Ga. 219, 221 (1983) (application of ordinance to defendant who lacked criminal intent violated due process clause).[10]  O.C.G.A. § 42-1-15 fails to provide fair warning of prohibited conduct.

---

[9]      *See generally Sheffield v. State*, 281 Ga. 33, 35 (2006); *Moody v. State*, 253 Ga. 456, 456 (1984); *Carr v. State*, 196 Ga. App. 397 (1990).

[10]      Courts permit the elimination of a *mens rea* requirement only for limited offenses.  *See, e.g., United States v. Balint*, 258 U.S. 250, 251-53 (1922) (*mens rea* generally required, although certain regulatory or public welfare offenses may apply strict liability); *United States v. Freed*, 189 Fed. Appx. 888, 891 (11th Cir. 2006) (intent not a necessary element of regulation, in part, because the punishment imposed was small).

**D.**    **Crimes for Volunteering/Employment at Churches are Unconstitutionally Vague.**

The prohibition against volunteering and employment at a church is unconstitutionally vague for the reasons in *Plaintiffs' Brief in Support of Motion for Summary Judgment to Stop the Criminalization of Protected Religious Activity*.

**E.**    **The Failure to Define "Address" is Unconstitutionally Vague.**

O.C.G.A. § 42-1-12(a)(1) is unconstitutionally vague.  This code section requires all Plaintiffs to register an "address," upon penalty of 10 to 30 years in prison.  The code section further specifies that "homeless" is not an "address." Under the reasoning of *Santos v. State*, 284 Ga. 514 (2008), Plaintiffs request that this Court find that the address provision is unconstitutionally vague.[11]

**II.**    **O.C.G.A. § 42-1-15 AND O.C.G.A. § 42-1-12  ARE UNCONSTITUTIONALLY OVERBROAD.**

Sections 42-1-15 and 42-1-12 violate the Due Process Clause because they are impermissibly overbroad.  Under the overbreadth doctrine, a statute that prohibits a substantial amount of constitutionally protected conduct may be invalid on its face.  *United States v. Williams*, 444 F.3d 1286, 1296 (11th Cir. 2006).

The Georgia Supreme Court concluded in *Mann v. State*, 278 Ga. 442 (2004) (*Mann I*) that Georgia's 2004 sex offender residence law was not constitutionally

---

[11]    Such relief is necessary because *Santos* does not afford class-wide relief.

overbroad because it did not reach a substantial amount of constitutionally protected conduct.   Section 42-1-15 has been significantly altered since that decision and Plaintiffs submit that, under the revised Statute, substantial constitutionally protected conduct is restricted.   The residence, employment, volunteering, and loitering restrictions in the Statute interfere with protected conduct such as working, going to church and living with one's family, and the Statute's restrictions are not narrowly tailored to public safety interests:

- While the Statute's residency restrictions may be justified if targeted to certain offenders, Georgia treats every offender like the worst offender. The Statute treats individuals such as Janet Allison, convicted for not preventing her 15-year old daughter from becoming sexually active, just as it treats someone who has repeatedly assaulted children.

- Under the Statute, even a hospice patient – someone who poses no danger to anyone – is forced out of his nursing home if it is within 1,000 feet of a church or pool.  The absence of even a procedure to apply for exemption makes the law overbroad in its application.

- The Statute's employment restriction is overbroad.  It applies to everyone on the registry – even to Wendy Whitaker who is on the registry for engaging in consensual sex when she was a sophomore in high school.  It

bars any Plaintiff from employment at any business within 1,000 feet of a church, even if the church is only in operation one day per month on a day the Plaintiff does not work.   The Statute's employment restriction significantly hinders Plaintiffs' ability to earn a living – especially in urban areas.   Hundreds of Plaintiffs have lost their jobs and/or been unable to apply for jobs as a result of the Statute's employment restriction.

- The Statute's prohibition against volunteering at a church is overbroad and interferes with protected activities.   The prohibition on volunteering at a church is so overbroad that it turns the act of singing in the church choir, working at a church soup kitchen, or baking a pie for a church function into a felony punishable by 10 to 30 years in prison.

- The Statute's prohibition against loitering within 1,000 feet of a church, school, or any area where minors congregate is overbroad.   The loitering provision interferes with Plaintiffs' ability to conduct activities essential to daily living, such as grocery shopping, eating at restaurants, shopping at malls and other such activities.   The prohibition against loitering within 1,000 feet of a church discourages Plaintiffs from attending church services – including weddings and funerals – and participating in other church-

sponsored activities.  The risk of going to prison if they are thought to be "loitering" is too high a price to pay for church attendance.

- The Statute is overbroad because it makes it illegal to be homeless. Plaintiffs who become homeless twice in their lives are subject to life imprisonment.

For these reasons, the challenged provisions restrict substantial constitutionally protected conduct and are wholly mismatched with the goal of preserving public safety.

Respectfully submitted this 28th day of September, 2009.

<u>**s/ Sarah Geraghty**</u>

SOUTHERN CENTER
FOR HUMAN RIGHTS
Stephen B. Bright
(Ga. Bar No. 082075)
Sarah Geraghty
(Georgia Bar No. 291393)
Gerald R. Weber
(Georgia Bar No. 744878)
83 Poplar Street, N.W.
Atlanta, Georgia  30303-2122
Telephone: (404) 688-1202
Fax: (404) 688-9440
sbright@schr.org
sgeraghty@schr.org
gweber@schr.org

*Attorneys for the Plaintiffs*

## CERTIFICATION OF COMPLIANCE WITH L.R. 5.1B

Pursuant to L.R. 7.1, I, Sarah Geraghty, hereby certify that this document has been prepared in compliance with Local Rule 5.1B.

Dated this 28th day of September, 2009.


**s/ Sarah Geraghty**

Sarah Geraghty
(Ga. Bar No. 291393)
Southern Center for Human Rights
83 Poplar Street, N.W.
Atlanta, Georgia  30303-2122
Tel: (404) 688-1202
Fax: (404) 688-9440
sgeraghty@schr.org

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day served the foregoing document upon Defendants by causing a true and correct copy thereof to be delivered by the Court's ECF filing system to Defendants' counsel of record at the following addresses:

Mr. Joseph Drolet
Ms. Devon Orland
Office of the Attorney General
40 Capitol Square
Atlanta, GA  30334

Mr. David E. Hudson
Hull, Towill, Norman, Barrett & Salley, PC
P.O. Box 1564
Augusta, GA  30903-1564

This 28th day of September, 2009.

**<u>s/Sarah Geraghty</u>**
Sarah Geraghty
(Ga. Bar No. 291393)
Southern Center for Human Rights
83 Poplar Street, N.W.
Atlanta, Georgia  30303-2122
Tel: (404) 688-1202
Fax: (404) 688-9440

*Attorney for the Plaintiffs*
